359 So.2d 883 (1978)
BLUE SHIELD OF FLORIDA, INC., Appellant,
v.
Ollie WOODLIEF and Barbara Woodlief, Appellees.
No. HH-180.
District Court of Appeal of Florida, First District.
May 19, 1978.
Rehearing Denied July 5, 1978.
Jeffrey A. Cramer of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Pensacola, for appellant.
Thomas F. Condon of Holsberry, Emmanuel, Sheppard & Condon, Pensacola, for appellees.
SMITH, Acting Chief Judge.
Blue Shield appeals from a circuit court summary judgment awarding appellee Woodlief $205 plus costs and attorney's fees on account of Blue Shield's refusal to pay a $205 dental surgery bill incurred by Mr. Woodlief. Woodlief, whose wife is an employee of Escambia County, is insured under *884 a group contract issued to the Escambia County Board of County Commissioners by Blue Cross of Florida, Inc. and Blue Shield of Florida, Inc. The coverage in dispute is provided by Blue Shield alone. The trial court found the insurance contract and a pamphlet describing it ambiguous in their coverage or exclusion of benefits for dental surgery and so awarded the cost of such surgery under a construction of the documents most favorable to the insured.
Mr. Woodlief's surgery bill included the following items: (1) initial examination, $10; (2) diagnostic panelipse, $20; (3) outpatient general anesthesia, $25; (4) extraction of three teeth, $45; (5) mandibular alveoloplasty, $40; and (6) removal of palatal inflammatory hyperplasia and relining of denture, $75. The charges totaled $215. The trial judge awarded $205 in damages, apparently finding that the fee for the initial examination was not a covered expense. Blue Shield contests coverage for the services rendered, but does not allege that the charges were excessive by the standard set for surgical services in the policy's schedule of benefits.
By affidavit, the treating dentist stated that the extractions were required because of excessive tooth decay and the removal of palatal tissue was made necessary by the growth of malformed tissue caused by illfitting dentures. Mr. Woodlief claimed the entire amount under the policy's provision of benefits for doctors' services and its recital that the insurer will pay for minor surgery, diagnostic x-rays, anesthesia, and certain other services up to amounts prescribed in a "schedule of benefits" which has not been included in the record. There follows a list of services for which benefits are not provided, including dental services.
The claimed ambiguity arises on a page of the insurer's descriptive pamphlet which was supplied to inform members of the insured group of coverages and exclusions:
SERVICES BY A NONPARTICIPATING PHYSICIAN.
Should you receive care from one of the few licensed doctors of medicine (MD) or doctors of osteopathy (DO) who are not participating in Blue Shield, the benefits listed in this booklet and your contract will still apply but Blue Shield may elect to make payment directly to you.
Doctors of dental surgery (DDS) and doctors of surgical chiropody (DSC) are also regarded as nonparticipating physicians if they provide services covered by your contract and they are acting within the scope of their licenses.
SERVICES NOT COVERED.
The following services are not covered by your Blue Shield contract: hospital, dental or nursing services, appliances and supplies; rest cures; services primarily for diagnostic purposes; care obtained in US government hospitals; care for injuries or sickness contracted in the military forces; care obtained without cost; occupational ailments or injuries; operations for cosmetic or beautifying purposes.
The clause relating to nonparticipating physicians does not suggest that all dental services, otherwise excluded, are covered when rendered by doctors of dental surgery. That clause simply saves benefits otherwise payable for services when rendered by nonparticipating physicians. An ambiguity exists in an insurance policy only when its terms make the contract subject to different reasonable interpretations, one of coverage and one of exclusion; ambiguity is not invariably present when analysis is necessary to interpret the policy. Central Mutual Ins. Co. v. Elliott, 347 So.2d 812 (Fla. 1st DCA 1977); Continental Casualty Co. v. Borthwick, 177 So.2d 687, 690 (Fla. 1st DCA 1965). Absent ambiguity, we cannot require coverage in the face of an explicit policy exclusion. Emmco Ins. Co. v. Southern Terminal and Transp. Co., 333 So.2d 80, 82 (Fla. 1st DCA 1976).
The exclusion of benefits for dental services is, however, uncertain. The policy does not define dental services or give any indication of the intended scope of the term. Nor does it state that services otherwise compensable would be excluded if performed by a dentist. We therefore construe the term liberally in favor of the insured and strictly against the insurer *885 within the scope of its natural, commonly understood meaning. Stuyvesant Insurance Co. v. Butler, 314 So.2d 567 (Fla. 1975) and cases cited therein. "Dental services" in this context must be taken to mean health care services performed directly on teeth. Thus the fee for Mr. Woodlief's extractions was not a covered expense. The other fees for the diagnosis, removal or treatment of diseased tissue and bone were covered expenses. We therefore modify the award of damages by subtracting the $45 fee for extractions, leaving an award of $160.
A complaint for declaratory judgment was used here as a device to bring a claim into circuit court when the plaintiffs' real objective was a money judgment which did not satisfy the requisite jurisdictional amount. We decide the case to preserve the benefits of judicial labor already invested, but disapprove this misuse of the declaratory judgment procedure.
The principal amount of the judgment is reduced by $45 and, as so modified, is AFFIRMED. Appellees are awarded $350 on account of their attorney's appellate services. Section 627.428, Florida Statutes (1977).
ERVIN and BOOTH, JJ., concur.