**GULF TAMPA DRYDOCK COMPANY, Plaintiff-Appellant,**

v.

**GREAT ATLANTIC INSURANCE COMPANY, Defendant-Appellee.**

No. 84–3294.

United States Court of Appeals, Eleventh Circuit.

April 15, 1985.

D. Lawrence Rayburn, Tampa, Fla., for plaintiff-appellant.

Carl R. Nelson, Tampa, Fla., for defendant-appellee.

Before HILL, KRAVITCH and SMITH,[*] Circuit Judges.

JAMES C. HILL, Circuit Judge:

In this appeal we must determine the scope of insurance coverage provided by a maritime ship repairer's liability policy. The insured, Gulf Tampa Drydock Compa-

---

[*] Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

ny (Gulf Tampa), appeals from an adverse summary judgment ruling in which the district court found that the insurer, Great Atlantic Insurance Company (Great Atlantic), had no obligation to defend or provide coverage against a third-party complaint brought against Gulf Tampa. We affirm, holding that the provisions of the insurance contract are not ambiguous, and that the policy does not provide coverage in the present situation.

The facts in this case have been stipulated. This litigation results from a suit brought in federal district court in Louisiana against the M/V Alice St. Philip by the owners of two vessels. The plaintiffs in that case alleged that the sudden swerving of the M/V Alice St. Philip caused a collision between the M/S Frotaleste and the M/V Cunene. The M/V Alice St. Philip claimed that the swerving was caused by a failure in the steering mechanism which allegedly had been negligently repaired by Gulf Tampa.[1] Gulf Tampa was thus required to appear and defend as third-party defendant. Gulf Tampa, in turn, requested indemnification from and tendered the defense to its insurer, Great Atlantic. Great Atlantic denied coverage and refused to defend the third-party complaint; Gulf Tampa then initiated this action seeking a judgment declaring Great Atlantic's obligation to defend the suit and indemnify against any liability.

## DISCUSSION

As an initial matter, we must determine what law will control the question of coverage. As the parties correctly point out in their briefs, admiralty courts will generally look to appropriate state law in determining questions involving a marine insurance contract. *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 315–21, 75 S.Ct. 368, 371–74, 99 L.Ed. 337 (1955); *Irwin v. Eagle Star Insurance Co.*, 455 F.2d 827 (5th Cir.), *cert. denied*, 409 U.S. 852, 93 S.Ct. 118, 34 L.Ed.2d 95

(1972). However, the question remains as to *which* state law is appropriate. In the instant case, the insurer is a Canadian company. The insured is a Florida corporation, doing business in Florida. The insurance policy was delivered in Florida. The alleged negligent repairs were performed in Florida, while the resulting injury (the collision of the two vessels) occurred in Louisiana. Both parties in the instant case have apparently agreed that Florida law should be applied. Florida's is the applicable state law. *See Irwin*, 455 F.2d at 830.

Since the parties stipulated to the facts, we are faced with only one question on appeal: whether the district court correctly construed the insurance policy to preclude coverage. The district court's conclusion as to the ambiguity of the insurance policy is a question of law and therefore subject to plenary review. *Cathbake Investment Co. v. Fisk Electric Co.*, 700 F.2d 654, 656 (11th Cir.1983). Under Florida law, the interpretation of an insurance contract is also a matter of law to be decided by the court, which is subject to plenary review. *Smith v. State Farm Mutual Automobile Insurance Co.*, 231 So.2d 193, 194 (Fla.1970) (where evidence is undisputed, construction and interpretation of insurance contract to be decided by the court); *see Rigel v. National Casualty Insurance*, 76 So.2d 285, 286 (Fla.1954).

Under Florida law, an insurance policy should be construed in its entirety and given the construction which reflects the intent of the parties. *Landress Auto Wrecking Co. v. United States Fidelity & Guaranty Co.*, 696 F.2d 1290, 1291 (11th Cir.1983) (applying Florida law). When the language of a policy is unclear or confusing, the language must be construed against the insurer. *Id.; Rigel*, 76 So.2d at 286; 30 Florida Jur.2d, *Insurance* § 406 (1981). However, ambiguity exists in an insurance policy only when its terms make the contract susceptible to different reasonable interpretations, one resulting in cover-

---

1. It is not alleged that, in repairing the M/V Alice St. Philip, Gulf Tampa had subjected the

vessel to any accidental damage.

age and one resulting in exclusion. *Blue Shield of Florida, Inc. v. Woodlief,* 359 So.2d 883, 884 (Fla.App.1978). Ambiguity is not invariably present when analysis is required to interpret the policy. *Id.*

The applicable provisions of the insurance policy read as follows:

1. In consideration of the above premium, this policy covers the legal liability of the assured, as ship repairers and/or ship builders and/or storers and/or marina operators of boats in the care and/or custody of this assured on the premises described hereunder and for which the assured may be held legally liable, such legal liability only as imposed upon them by law, and from which they cannot release themselves, arising during the currency thereof in respect of all accidents, losses and damages which may be sustained by any vessel or vessels and/or their equipment and/or parts and/or cargo, on which they may be engaged or preparing to engage in work or operations, or vessels which may be in their charge and/or arising from and/or in connection with the conduct of their plant.

This insurance to include vessels on dry dock and/or marine railways used in connection therewith and including work on or in connection with vessels anywhere in the vicinity of the assured's yard and/or wherever the vessel or vessels and/or craft may be anywhere within a radius of NO LIMITATIONS miles from the assured's premises.

It is clear that the intent of the parties was that Great Atlantic insure Gulf Tampa against loss due to liability imposed upon it on account of damage done to vessels upon which it was working as a ship repairer.

■ The policy language was drawn to define, prospectively, the coverage available under it. Thus, it contains words inapplicable to the contentions of the parties here; it seeks to provide for all contingencies in all cases. We therefore discard language inappropriate to this case and search for the meaning of the rest. We interpret the policy as follows.

The consideration for the undertakings of the insurer is the "above premium."

The policy covers "legal liability of the assured." If the assured engages in more than one enterprise, coverage is not provided for liabilities except those of the "assured, as ship repairers ... of boats in the care and/or custody of the assured ...."

While such an enterprise may incur liabilities resulting from a variety of occurrences, this policy protects only against those liabilities "in respect of all accidents, losses and damages which may be sustained by any vessel ... on which they [the assured] may be engaged ... in work ... arising from and/or in connection with the conduct of their plant."

The policy extends coverage against such liabilities whether the vessel upon which repair work is being done when the damage occurred was on the assured's premises or elsewhere.

Nowhere in the policy is coverage provided for the success or failure of the assured's repair work. This is not a "products liability" or "completed operations" policy. If the assured does unsatisfactory work on the vessel, but does not damage the vessel while working on it (or while the vessel is in its custody for such work), it is not covered against liability to its dissatisfied customer.

■ Appellant argues that the words "arising from and/or in connection with the conduct of their plant" is an expression which provides broad coverage.[2] It does broaden coverage so that the damage to the vessel producing liability is not limited to damage proximately resulting from the repair operation being done. It may arise from or be in connection with any circumstances occurring at the assured's plant. Thus, if a fire occurs due to the assured's fault, resulting in damage to or loss of the vessel, the assured is protected, even

---

**2.** *See e.g., Government Employees Insurance Co. v. Novak,* 453 So.2d 1116 (Fla.1984) ("arising out of" does not mean "proximately caused by," but has a much broader meaning.)

though the events giving rise to the fire are totally unconnected to the work being done on the vessel. Nevertheless, there must be damage to or loss of a vessel being worked on by the assured (or in the care and custody of the assured) for the liability arising therefrom to be covered.

██ We have carefully inspected the claims asserted in the Louisiana litigation. Nowhere is it alleged in those claims that any loss resulted from damage done to the M/V Alice St. Philip while appellant was engaged in ship repair operations upon it.[3] The gravaman of all complaints is that the appellant improperly performed repair work to the M/V Alice St. Philip's steering apparatus. Liability, if any, resulting from such a claim is not within the coverage of this policy.

AFFIRMED.

---

3. We are, therefore, not required to determine whether or not a customer's claim for indemnity against claims of another would fall within the coverage if the incident was said to have resulted from damage done to the vessel while being repaired.