United States Court of Appeals,

Eleventh Circuit.

No. 95-4284.

CITY OF DELRAY BEACH, FLORIDA, Plaintiff-Counter Defendant-Appellant,

Lawrence A. Razette, John J. Razette, Intervenor-Plaintiffs,

v.

AGRICULTURAL INSURANCE CO., Mission Insurance Co., Mission National Insurance Co., Mission American Insurance Co., Aetna Casualty & Surety Co., Hartford Accident and Indemnity Co., Century Indemnity Company, Continental Insurance Company, Pacific Employers Insurance Co., American Centennial Insurance Co., Universal Security Insurance Co., Mutual Fire, Marine & Inland Insurance Co., Defendants-Intervenor Defendants-Appellees,

Illinois Insurance Exchange, Transco Syndicate # 1, Ltd., Defendants-Intervenor-Defendants Counter-Claimants-Appellees.

June 25, 1996.

Appeal from the United States District Court for the Southern District of Florida (No. 91-8281-CV-SM), Stanley Marcus, Judge.

Before HATCHETT, Circuit Judge, FAY, Senior Circuit Judge, and WOOD[*], Senior Circuit Judge.

HATCHETT, Circuit Judge:

We affirm for all the reasons stated in the district court's order dated September 9, 1994, granting summary judgment in favor of the appellees and against the City of Delray Beach. We attach the order as an "Appendix."

APPENDIX

CITY OF DELRAY BEACH, Plaintiff,

v.

AGRICULTURAL INSURANCE COMPANY, MISSION INSURANCE COMPANY, AETNA CASUALTY AND SURETY COMPANY, HARTFORD ACCIDENT AND INDEMNITY

---

[*]Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

COMPANY, ILLINOIS INSURANCE EXCHANGE, CALIFORNIA INSURANCE COMPANY, CONTINENTAL INSURANCE COMPANY, PACIFIC EMPLOYERS INSURANCE COMPANY, AMERICAN CENTENNIAL INSURANCE COMPANY, UNIVERSAL SECURITY INSURANCE COMPANY, MUTUAL FIRE, MARINE & INLAND INSURANCE COMPANY, AND TRANSCO SYNDICATE # 1, LTD., Defendants.

CASE NO. 91-8281-CIV-MARCUS

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

*ORDER*

THIS CAUSE comes before the Court upon (1) Defendant Transco Syndicate # 1, Ltd. and Illinois Insurance Exchange's (collectively "Transco Syndicate") motion for summary judgment, filed July 6, 1992; and (2) California Union Insurance Company's ("California Union") motion for summary judgment, filed on November 18, 1993. As to the first motion, United States Magistrate Judge Stephen T. Brown, upon an order of reference, issued a Report and Recommendation on September 27, 1993, recommending that Transco Syndicate's motion for summary judgment be granted. Plaintiff, the City of Delray Beach, timely filed an objection to the Report and Recommendation. Among a number of issues raised in the motions, the parties present the following issue of first impression under Florida law: whether the "personal injury endorsements" contained in the Defendants' comprehensive general insurance policies provide coverage for the environmental contamination that occurred in this case. For the reasons that follow, we conclude, as a matter of law, that the moving parties' CGL policies do not provide such coverage under Florida law. Accordingly, Transco Syndicate's motion for summary judgment is GRANTED and California Union Insurance Company's motion for summary judgment is GRANTED.

I.

The factual and procedural background of the motions for summary judgment filed in this matter are not in dispute. On April 21, 1988, in a separate action, the City of Delray Beach brought suit in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, against a number of defendants for allegedly polluting the city's water supply. *See City of Delray Beach v. Aero-Dri Corp., et al.,* Case No. 88-3672-AJ. It appears that the Defendants failed to dispose of their waste solvents at a proper disposal facility and polluted the ground water through the discharge of those solvents. The City of Delray Beach alleged a continuous and systematic pattern of improper waste disposal and contamination of the city's drinking water. A jury returned a verdict in the case for the City in the amount of $8,697,488.00 for past and future compensatory damages.

The City of Delray Beach now brings this cause of action against numerous insurers, alleging that these insurance companies provided various amounts of coverage to the defendants in the underlying state court action. Three of the defendant insurance companies here have filed motions for summary judgment arguing that as a matter of law their insurance policies do not provide coverage for the cause of action in the underlying state case. Defendants Transco Syndicate # 1, Ltd., and Illinois Insurance Exchange jointly wrote three commercial general liability insurance policies insuring two of the defendants in the underlying state court action: (1) Policy # DOL02250, providing primary coverage of $500,000 for the period of October 1, 1985 through October 1, 1986; (2) Policy # DOL07567, providing primary coverage of $1,000,000 for

the period of October 1, 1986 through October 1, 1987; and (3) Policy # DOL104251, providing excess coverage of $1,000,000 for the period of October 1, 1987, through October 1, 1988. California Union issued one policy that is at issue in this case, Policy No. 2204 EPO 01287, providing coverage for a policy period from October 1, 1987 through October 1, 1988.

Transco Syndicate and California Union have filed separate motions for summary judgment asking this Court to find, as a matter of law, that they do not owe any coverage under the above-stated insurance policies to the City of Delray Beach for liability incurred by the defendants in the underlying state court action. In short, the insurance companies argue that the "pollution exclusion clauses" contained in their respective comprehensive general liability insurance policies preclude coverage to their insureds for any liability for the environmental contamination that occurred in this case. Plaintiff has responded that Transco Syndicate and California Union are liable on the following independent grounds: (1) the pollution exclusion clauses contained in the comprehensive general liability insurance policies do not preclude coverage to the insureds for the environmental contamination that occurred in this case; and (2) that even if the pollution exclusion clauses do generally preclude coverage, the insurance companies separately owe coverage under "personal injury endorsements" contained in each of the policies.

Procedurally, this Court referred Transco Syndicate's motion for summary judgment to United States Magistrate Judge Stephen T. Brown for a Report and Recommendation. Based upon the Supreme

Court of Florida's recent ruling in *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Insurance Corp.,* 636 So.2d 700 (Fla.1993), *reh'g denied,* March 31, 1994, the Magistrate Judge issued a Report and Recommendation in which he recommended that the motion for summary judgment be granted in favor of the Defendants as to both theories of recovery that the Plaintiff had asserted. We now consider both motions for summary judgment together.

## II.

The standard to be applied in reviewing summary judgment motions is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It may be entered only where there is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In applying this standard, the Eleventh Circuit has explained:

> In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608; [*Environmental Defense Fund v.*] *Marsh,* 651 F.2d [983] at 991 [ (5th Cir.1981) ]. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts.

*Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronics* [*Techniques, Inc. v. Wackenhut Protective Systems, Inc.*], 669 F.2d [1026] at 1031 [ (5th Cir.1982) ]. *Croley v. Matson Navigation Co.,* 434 F.2d 73, 75 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. at 160, 90 S.Ct. at 1609-10; *Marsh,* 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611-12 (5th Cir.1967). *See Dalke v. Upjohn Co.,* 555 F.2d 245, 248-49 (9th Cir.1977).

*Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368-69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1502 (11th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

The United States Supreme Court has recently provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

[The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 320 U.S. 476, 479-80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of

APPENDIX—Continued

evidence in support of the position will be insufficient; there

must be evidence on which the jury could reasonably find for the [non-movant]."  *Id* at 252, 106 S.Ct. at 2512.  In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it.  *Id* at 254, 106 S.Ct. at 2513.  If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted.  *Id* at 254-55, 106 S.Ct. at 2513-14.

In another recent case, the Supreme Court has declared that a non-moving party's failure to prove an essential element of a claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

### III.

#### A.

Under Florida law, a number of general rules govern our

interpretation of the insurance policies in question, particularly as to whether any ambiguities exist in the policies' language. To begin, where the essential facts of the case are not in dispute, it is appropriate for the district court to interpret an insurance contract to determine whether any ambiguities exist as to coverage as a matter of law. *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.,* 757 F.2d 1172, 1174 (11th Cir.1985) (applying Florida law) (determined on motion for summary judgment); *Jones v. Utica Mut. Ins. Co.,* 463 So.2d 1153 (Fla.1985) (interpretation of policy appropriate where no dispute over the facts). An "ambiguity" exists in an insurance policy only when a term or provision in that policy is susceptible to two or more differing, reasonable interpretations—one resulting in coverage and one resulting in exclusion. *Dahl-Eimers v. Mutual of Omaha Life Ins. Co.,* 986 F.2d 1379, 1381 (11th Cir.1993) (applying Florida law) (citing *Weldon v. All Am. Life Ins. Co.,* 605 So.2d 911, 915 (Fla. 2d DCA 1992)).

Furthermore, this Court must interpret the provisions at issue in an insurance policy in the context of the entire policy. As the Eleventh Circuit has observed:

> [i]n Florida, a court must construe every insurance contract according to the entirety of its terms and conditions. A court should construe each sentence in connection with other provisions of the policy to arrive at a reasonable construction that accomplishes the intended purpose of the parties. *Haenal v. United States Fidelity & Guar. Co.,* 88 So.2d 888 (Fla.1956).

APPENDIX—Continued

*International Ins. Co. v. Johns,* 874 F.2d 1447, 1456 (11th Cir.1989); *see also Reid v. State Farm Fire & Casualty Co.,* 352 So.2d 1172 (Fla.1977).

In determining whether an ambiguity exists, we are to assess first the natural or plain meaning of the policy language in dispute. *Dahl-Eimers,* 986 F.2d at 1382 (citing *Landress Auto Wrecking Co. v. United States Fidelity & Guar. Co.,* 696 F.2d 1290, 1292 (11th Cir.1983) (applying Florida law)). Although an insurance contract may often be a complex instrument, it does *not* follow that an analysis of that contract conducted in order to fully comprehend its meaning implies any ambiguity. *Alpha Therapeutic Corp. v. St. Paul Fire & Marine Ins. Co.,* 890 F.2d 368, 370 (11th Cir.1989) (citing *State Farm Fire & Casualty Co. v. Oliveras,* 441 So.2d 175, 178 (Fla. 4th DCA 1983)). It is true that an ambiguity, when found, is to be construed strictly in favor of the insured. *Rigel v. National Casualty Co.,* 76 So.2d 285, 286 (Fla.1954). However, where no ambiguity exists, the court is restricted from creating one through the addition of a meaning which is not present in the terms of the policy. *Excelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So.2d 938 (Fla.1979).

B.

The first issue raised in the motions for summary judgment is whether or not, as a matter of law, the "pollution exclusion clauses" contained in the comprehensive general liability insurance policies of the two Defendants preclude coverage to their insureds for liability for the environmental contamination that occurred in this case. While this issue was hotly contested in Florida as recently as eighteen months ago, the Supreme Court of Florida has now essentially resolved it in favor of the insurer.

This issue of whether coverage exists under the bodily injury

or property damage provisions of a comprehensive general liability policy has been difficult for courts around the country to decide, and perhaps none more so than the Supreme Court of Florida. Originally, in *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Insurance Co.,* No. 78, 293, 1992 WL 212008 (Fla. September 3, 1992), the Court, in a 4-3 vote, held that the 1973 CGL pollution exclusion clause did not preclude coverage for liability arising out of environmental contamination as a matter of law. This decision essentially offered the following three holdings: (1) the term "sudden and accidental" as used in the pollution exclusion is susceptible to more than one meaning, including "abrupt and immediate" and "unexpected and unintended"; (2) divergence among jurisdictions in the construction of the pollution exclusion clause was indicative of the ambiguity inherent in the exclusion; and, (3) the drafting history of the pollution exclusion clause cut in favor of finding coverage (due in large part to misrepresentations allegedly made to Florida's Insurance Commissioner at the time that it was submitted for approval with the State). *Id.*

However, in July of 1993, the Supreme Court of Florida withdrew the earlier opinion and reversed its position in *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Insurance Co.,* 636 So.2d 700 (Fla.1993), to conclude that as a matter of law the pollution exclusion clause precludes coverage for environmental contamination liability. In this opinion, the Supreme Court of Florida essentially held the following: (1) the drafting history of the pollution exclusion clause has support on both sides and does not resolve the issue; and (2) the term "sudden and accidental" is not

ambiguous—"[a]s expressed in the pollution exclusion clause, the word sudden means abrupt and unexpected." *Id.* at 703-706. As the Court concluded:

> In the final analysis, we construe this policy to mean that (1) basic coverage arises from the occurrence of unintended damages, but (2) such damages as arise from the discharge of various pollutants are excluded from basic coverage, except that (3) damages arising from the discharge of these pollutants will fall within the coverage of the policy where such discharge is sudden and accidental.

*Id.* at 705 (citing *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.,* 957 F.2d 1153 (4th Cir.), *cert. denied,* 506 U.S. 824, 113 S.Ct. 78, 121 L.Ed.2d 42 (1992)).

While six of the seven Justices held to the same position as in the original opinion, Justice Grimes reversed his stance to favor the argument that the pollution exclusion clause precludes coverage for environmental damages liability. Justice Grimes wrote a concurrence that, in full, states:

> I originally concurred with the position of the dissenters in this case. I have now become convinced that I relied too much on what was said to be the drafting history of the pollution exclusion clause and perhaps subconsciously upon the social premise that I would rather have insurance companies cover these losses rather than parties such as Dimmitt who did not actually cause the pollution damage. In so doing, I departed from the basic rule of interpretation that language should be given its plain and ordinary meaning. Try as I will, I cannot wrench the words "sudden and accidental" to mean "gradual and accidental," which must be done in order to provide coverage in this case.

*Id.* at 706 (Grimes, J., concurring).

Based upon this newer opinion in *Dimmitt Chevrolet,* Magistrate Judge Brown recommends that the motions for summary judgment be granted as to the issue of the bodily injury and property damage provisions. Specifically, the Magistrate Judge recommended that "[g]iven the plain and ordinary meaning of the exclusions in these

policies, it was clearly the intent of the parties to exclude coverage for the cause of action in the underlying litigation." Rep. & Rec., p. 6. Recognizing that there are a number of differences in the language of the various pollution exclusion clauses used by Transco Syndicate and California Union, the Magistrate Judge further observed:

> The plaintiff, utilizing supreme lawyer ingenuity attempts to create an ambiguity by pointing out that each of the clauses contains different words. The issue is not the words used, but rather their meaning. One of us may say that six plus one equals seven. Another of us may say five plus two equals seven. Yet a third may say four plus three equals seven. We have all reached the same conclusion traveling different paths. It is insignificant to this court that merely because different words were used there *must* be an ambiguity here, somewhere. Furthermore, the issue is not whether this is an absolute exclusion, but whether it is clear and [un]ambiguous that the exclusionary clauses herein intended to eliminate coverage for the activities alleged in the underlying action.

*Id.* at 6-7.

In both its objection to the Magistrate Judge's Report and Recommendation concerning the Transco policies and in response to California Union's motion for summary judgment, Plaintiff concedes the difficulty of the position it takes. For instance, in its response to California Union's motion for summary judgment, Plaintiff states:

> Obviously, the Plaintiff is bound to recognize the status of Florida law to the extent that Florida law controls the outcome of the instant litigation. Although the City of Delray Beach does not agree with the [Florida] Supreme Court's opinion on rehearing, and believes that the original opinion should have remained applicable, the Plaintiff must accept the current state of the law *on that issue* as the Florida Supreme Court has decided it.

Pltff.'s Resp. to Cal. Union's Mot.Summ.Judgm. at 2.

We agree fully with the position of the Magistrate Judge (and the concession on the part of Plaintiff) as to the issue of

coverage under the bodily injury and property damages provisions of the comprehensive general liability policies: the Supreme Court of Florida has laid the issue to rest in *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Insurance Co.,* 636 So.2d 700 (Fla.1993). Accordingly, on this particular issue, the motions for summary judgment filed by Transco Syndicate and California Union are GRANTED.

C.

Accordingly, we turn to the issue on which the parties focus their attention, the issue of whether the "personal injury endorsements" contained in the Defendants' comprehensive general insurance policies provide coverage for the environmental contamination that occurred in this case.

The issue can be presented most clearly by using one of the insurance policies at issue as an example. In particular, we focus on the policy that all of the parties agree creates the greatest possibility of coverage in this matter: Transco Syndicate's Policy # DOL02250. Exclusion S of that policy, the "pollution exclusion" clause, provides:

> This insurance does not apply to bodily injury or property damage arising out of the discharge, disbursal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

The "personal injury endorsement" reads:

> "Personal Injury" means injury arising out of one or more of the following offenses committed during the policy period
>
> > 1. false arrest, detention, imprisonment, or malicious prosecution;
> >
> > 2. wrongful entry or eviction or other invasion of the

                    right of private occupancy;

          3. a publication or utterance

                    (a) of a libel or slander or other defamatory or
                    disparaging material, or

                    (b) in violation of an individual's right of
                    privacy, except publications or utterances in the
                    course of or related to advertising, broadcasting,
                    publishing or telecasting activities conducted by
                    or on behalf of the named insured shall not be
                    deemed personal injury.

By its terms, the pollution exclusion clause does not apply to
coverage under the personal injury endorsement, but only to "bodily
injury" or "property damage" coverage.  Therefore, if the personal
injury endorsement insures against the risk of environmental
contamination, then the pollution exclusion clause will not negate
that coverage.  In order for the defendant insurer to be liable
under the personal injury endorsement, however, the actions on
which the underlying claims against the insureds are based must
constitute one or more of the listed offenses.

     Unlike a general insurance policy, where coverage is stated in
     very broad terms and subject to clearly defined exceptions (as
     is the case in the bodily injury and property damage coverage
     of defendants' policies), the personal injury coverage is
     "buil[t] from the ground up and affords coverage only for
     defined risks.'

*County of Columbia v. Continental Ins. Co.,* 189 A.D.2d 391, 595
N.Y.S.2d 988, 991 (1993) (quoting *Martin v. Brunzelle,* 699 F.Supp.
167, 171 (N.D.Ill.1988)), *aff'd,* 83 N.Y.2d 618, 612 N.Y.S.2d 345,
634 N.E.2d 946 (1994).  The plaintiffs argue that the insureds'
failure to properly dispose of waste solvents and subsequent
pollution of drinking waters comprises a "wrongful entry or
eviction or other invasion of the right of private occupancy."  We
disagree.

First, the listed offenses under paragraph two of the personal injury endorsement require an interference with private *occupancy.* Both "wrongful entry" and "eviction" imply an interference with possessory rights. *County of Columbia v. Continental Ins. Co.,* 595 N.Y.S.2d at 991; Barry R. Ostrager, *Special Insurance Coverage Issues Arising Out of Hazardous Waste/Environmental Clean-Up Litigation, in Handbook on Insurance Coverage Disputes* § 10.05 (5th ed. 1992). Where, as here, no intent to occupy the property has been shown, and indeed no interference with possession has occurred, there can be neither wrongful entry nor eviction. Plaintiff's analysis requires that the term "other invasion of the right to private occupancy" lack such a requirement. However,

> [u]nder the doctrine of "ejusdem generis," when an enumeration of specific things is followed by some more general word or phrase, then the general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated. This doctrine is actually an application of the broader maxim "noscitur a sociis" which means that general and specific words capable of analogous meaning when associated together take color from each other so that the general words are restricted to a sense analogous to the specific words.

*Thomas v. City of Crescent City,* 503 So.2d 1299, n. 2 (Fla. 5th DCA 1987). Thus, when read in context, the phrase "other invasion of the right of private occupancy" means an offense tantamount to wrongful entry or eviction and requires an impingement upon possessory rights. Therefore, the environmental damage at issue in this case does not amount to any of the listed offenses under the personal injury endorsement.

Second, the enumerated offenses under the personal injury endorsement all relate to the violation of *private* rights. Here, there is no indication that the insureds are "threatened with

liability for interfering with property owners' or occupants' rights of private occupancy." *Harrow Products, Inc. v. Liberty Mut. Ins. Co.,* 833 F.Supp. 1239, 1246 (W.D.Mich.1993). Because there is no charge against the insureds by a private occupant of the city's water supply, there can be no "invasion of the right of private occupancy." *See id.* Plaintiff urges this Court to consider the decision in *City of Edgerton v. General Casualty Co.,* 172 Wis.2d 518, 493 N.W.2d 768 (Ct.App.1992), *rev'd in part on other grounds,* 184 Wis.2d 750, 517 N.W.2d 463 (1994). [1] In *Edgerton,* the Wisconsin Court of Appeals found coverage for a similar pollution of water supplies under an identical personal injury endorsement. However, the Wisconsin courts have been more receptive to finding environmental contamination coverage by insurance carriers than have the Florida courts. *Compare Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Co.,* 636 So.2d 700 (Fla.1993) (holding that the expression "sudden and accidental" in a pollution exclusion clause is unambiguous and conveys a temporal element), *with Just v. Land Reclamation, Ltd.,* 155 Wis.2d 737, 456 N.W.2d 570 (1990) (holding that the phrase "sudden and accidental" in a pollution exclusion clause has no temporal requirement).[2]

---

[1]In reversing this decision in part, the Wisconsin Supreme Court explicitly declined to decide the personal injury issue as unnecessary to their holding. As Plaintiff asserts, the court of appeals' opinion remains the sole statement of Wisconsin law on the personal injury question. Pl.'s Notice of Subsequent Case History, at 2. However, the Wisconsin Supreme Court opinion roundly criticizes the approach taken by the court of appeals, leaving doubt as to the Wisconsin Supreme Court's view of the personal injury portion of the decision rendered by the lower court.

[2]In addition, one Florida trial court considering the personal injury issue did find that personal injury coverage will

Furthermore, the court of appeals in *Edgerton* relied on a Wisconsin statute for its conclusion that private occupancy rights existed in the public water supply.  493 N.W.2d at 781.  Thus, this Court is not convinced that *Edgerton* is persuasive with respect to Florida law.

Moreover, this Court finds itself bound by the straightforward mandate of *Leek v. Reliance Insurance Co.,* 486 So.2d 701 (Fla. 4th DCA 1986).  The circumstances of that case neatly parallel those in the present action.  In that case, the Leeks were sued for property damages after they hired a service to cut the tops of a neighbor's trees which dropped pine needles onto the Leeks' property.  The Leeks then filed a third party complaint for coverage against their insurer.  The policies at issue provided coverage for property damage, but contained the following exclusion:  "We will not pay for property damage:  b. caused intentionally by any insured who is 13 years of age or older...."  *Id.* at 703.  In addition, the policies included coverage for personal injury, defined, in relevant part, as:  "invasion of privacy, wrongful eviction or wrongful entry...."  *Id.*  "The complaint against the Leeks specifically alleged both trespass and wrongful entry.  Nonetheless, the court held that the Leeks were not covered under their policy, stating:

---

not include environmental damage.  In *Florida Department of Environmental Regulation v. Chemairspray, Inc.,* No. 85-5527 (Fla.Cir.Ct. May 23, 1994), the court, relying on *Leek v. Reliance Insurance Co.,* 486 So.2d 701 (Fla. 4th DCA 1986), held that pollution damage could not fit within coverage for personal injury.  While we recognize that this decision is merely persuasive, it is indicative of the Florida courts' receptiveness to such claims for coverage.

Had this been an action for injury arising out of an insured tortious act;  namely, wrongful entry, we would [ ] have been compelled to reverse here....

But it is not a claim for personal injury, raising echoes of the old saw that if my aunt were a man, she would be my uncle.  Nowhere in the [first insurer's] policy is there any language, with respect to damage to the property of others, which would neutralize the specific exclusion for intentional acts of the insured which occasion damage to others' property.  Similarly, the [second insurer's] policy insures against injury;  and as its counsel argues in his brief:

"Simply put, one cannot "injure' property any more than one can "damage' a person."

Stated another way by [second insurer's] counsel at oral argument, personal injury is injury to a person.

*Id.* at 704.  Similarly, in this case, neither is there an exception to remove the damage in this action from the pollution exclusion clauses in these policies, nor can this environmental damage be considered personal injury.

Finally, as we have stated, we "must construe every insurance contract according to the entirety of its terms and conditions." *International Ins. Co. v. Johns,* 874 F.2d at 1456.  In addition, this Court agrees with the reasoning in *Titan Corp. v. Aetna Casualty and Surety Co.,* 22 Cal.App.4th 457, 27 Cal.Rptr.2d 476 (1994),[3] that no clause should be interpreted in a manner which eviscerates any other provision.  *Id.* at 485-86.  The analysis urged by Plaintiffs would result in precisely such a negation of the pollution exclusion clauses contained in these policies.  The type of environmental contamination present in this case would fall squarely within the coverage for property damage in this policy

_____

[3]The opinion in this case has been followed and its reasoning commended in *Staefa Control-Systems, Inc. v. St. Paul Fire & Marine Insurance Co.,* 847 F.Supp. 1460, 1474 (N.D.Cal.1994) (Patel, J.).

were it not expressly excepted by the pollution exclusion. Stretching the personal injury endorsement to cover risks specifically insured under the property damage provisions would essentially render the pollution exclusion meaningless. *Id.; County of Columbia v. Continental Ins. Co.,* 595 N.Y.S.2d at 991; *O'Brien Energy Sys. v. American Employers' Ins. Co.,* 427 Pa.Super. 456, 629 A.2d 957 (1993), *appeal denied,* 537 Pa. 633, 642 A.2d 487 (1994).

The resolution of the many issues surrounding insurance coverage for pollution-related environmental contamination has effected a sharp division among the courts around this nation. Despite the desire to shift the costs of clean-up to the deep pockets of insurers, the Florida courts have shown reluctance to distort the plain language and structure of insurance policies and the intentions of the parties contracting for insurance coverage. *See Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Co.,* 636 So.2d at 706 (Grimes, J., concurring). Accordingly, we agree with the interpretation of personal injury coverage offered by the court in *Titan Corp. v. Aetna Casualty & Surety Co.,* 27 Cal.Rptr.2d at 486. Relying on *Leek v. Reliance Insurance Co.,* 486 So.2d 701 (Fla. 4th DCA 1986), the *Titan* court "interpret[ed] the coverage afforded by the personal injury portion of the policy as being limited to damages other than the injury to realty which an occupier of land may suffer when his quiet enjoyment of occupancy is disturbed." *Titan,* 27 Cal.Rptr.2d at 486. Therefore, as a matter of law, this personal injury endorsement will not cover the environmental contamination presented in this case. Accordingly,

with respect to Transco Syndicate's Policy # DOL02250, the motion for summary judgment filed by Transco Syndicate is GRANTED.

D.

Also at stake in this litigation for Transco Syndicate are two additional policies issued to the insureds covering the time period from October 1, 1986, through October 1, 1988. In addition, a single policy was issued to the insureds by California Union covering the period from October 1, 1987 to October 1, 1988. These remaining three policies are susceptible to the same analysis given with respect to Transco Syndicate's Policy # DOL02250. The second policy issued by Transco Syndicate (Policy # DOL07567) and the California Union policy (Policy # 2204 EPO 01287) use the same definition of personal injury. The relevant portion provides coverage for injury due to "[w]rongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies"—a more limited definition with regard to wrongful entry-type offenses than that given in Transco Syndicate's Policy # DOL02250. Even in a leading case finding coverage under policy language identical to that in Transco Syndicate's Policy # DOL02250, the court found no duty to indemnify for damage from pollutants under language identical to that found in these two policies. *See Titan Holdings Syndicate v. City of Keene,* 898 F.2d 265, 272 (1st Cir.1990). Again, the offenses of wrongful entry and eviction cannot be inflated to reach the acts of pollution present in this case; the damages complained of are not personal injuries, and this Court will not interpret these insurance contracts in such a way that the pollution exclusion clauses are rendered

meaningless. Therefore, as a matter of law, the insurers owe no coverage with respect to these personal injury endorsements.

Finally, the third policy issued to the insureds by Transco Syndicate (Policy # DOL104251) contains a blanket pollution exclusion pertaining to all coverage—including personal injury:

> *ABSOLUTE POLLUTION EXCLUSION SUPERSEDING AND REPLACING ANY AND ALL PROVISIONS TO THE CONTRARY.*
>
> Regardless of *any provision* of this policy or of any applicable underlying policies of insurance it is understood and agreed that: the policy shall not apply to *any liability* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water, whether such discharge is sudden, accidental, or otherwise. (emphasis added).

Thus, as a matter of law, regardless of the coverage provided in the personal injury endorsement, liability for the environmental contamination present in this case will fall within the pollution exclusion, and no coverage exists under this policy for this environmental damage. *See Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp.,* 636 So.2d 700. Accordingly, with respect to Transco Syndicate's policies # DOL104251 and # DOL07567 and California Union's Policy # 2204 EPO 01287, the motions for summary judgment filed by Transco Syndicate and California Union are GRANTED.

Accordingly, it is hereby ORDERED and ADJUDGED that Defendant Transco Syndicate's motion for summary judgment is GRANTED, and Defendant California Union's motion for summary judgment is GRANTED. Defendants Transco Syndicate and California Union shall submit proposed orders for final summary judgment within ten (10)

days from the date of this Order.

DONE AND ORDERED in Miami, this 9th day of September, 1994.

/s/ <u>Stanley Marcus</u>

STANLEY MARCUS

UNITED STATES DISTRICT          JUDGE