United States Court of Appeals,

Eleventh Circuit.

No. 95-3210.

Esther KEY, Plaintiff-Appellant,

v.

ALLSTATE INSURANCE COMPANY, a foreign corporation, Defendant-Appellee.

Aug. 1, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 94-1935-CIV-T-21B), Ralph W. Nimmons, Jr., Judge.

Before COX and BARKETT, Circuit Judges, and BRIGHT[*], Senior Circuit Judge.

BARKETT, Circuit Judge:

Appellant-plaintiff Esther Key brought this suit against Appellee-defendant Allstate Insurance Co. seeking insurance coverage for a bodily injury claim resulting from an accident involving one of her vehicles. The district court granted summary judgment in favor of Allstate, and Key appeals. We reverse the decision of the district court.

Background

In May 1990, Key owned two cars: a Hornet, which was insured by Underwriters Guarantee Insurance Company ("Underwriters"), and an Astro, which was insured by Allstate. In January 1991, Key sold her Hornet, and purchased a Fiesta on January 19, 1991. The Fiesta replaced the Hornet under her Underwriters' policy, which covered personal injury and property damages; however, she did not

[*]Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

purchase bodily injury coverage from Underwriters. On January 23, 1991, the Fiesta was involved in an accident in which Norma Rowe was injured and the Fiesta was totaled. Norma Rowe sued Key and in April 1994 the jury awarded Rowe $465,404.25. On March 6, 1991, Key added the Fiesta to her Allstate policy effective March 5, 1991, and she subsequently incurred a premium increase of $20.10 for the period March 5, 1991 to April 16, 1991.

The Allstate policy on her Astro includes a "newly acquired ownership" provision, which reads:

> Additional four wheel private passenger or utility autos you acquire ownership of during the premium period. This auto will be covered if we insure all other private passenger or utility autos you own. You must, however, notify us within 60 days of acquiring the auto and pay any additional premium.

Key sought coverage from Allstate for the bodily injury damages, claiming that on the day of the accident her Fiesta was a "newly acquired vehicle" pursuant to her Allstate policy. Allstate denied coverage. Key subsequently sued Allstate seeking damages, interest, costs and attorney's fees resulting from Allstate's refusal to defend, negotiate, settle, and provide coverage on Norma Rowe's claim against her.

On appeal, Key argues that according to the plain language of Allstate's "newly acquired automobile" provision, an automobile is covered under the policy if four criteria are met: (1) the automobile at issue was acquired during the policy's premium period; (2) Allstate insured all other autos owned by the insured at the time of acquisition; (3) the insured notified Allstate within 60 days of acquiring the new automobile; and (4) the insured pays any additional premium. Key argues that these four

elements were met with respect to the Fiesta, and therefore, her Allstate policy covered the Fiesta at the time of the accident.

Allstate argues that the Fiesta was not covered in light of the purpose of the contract provision and the intent of the parties. Allstate contends that the purpose of the "newly acquired automobile" clause is to afford an insured a temporary, reasonable opportunity to acquire specific coverage upon purchase of a new vehicle. According to Allstate, as soon as Key obtained specific insurance coverage for the Fiesta with Underwriters, the Fiesta lost its status as a "newly acquired automobile" and became a "described automobile," i.e., an automobile described in some insurance policy. Thus, the Fiesta was not covered by Allstate at the time of the accident. Moreover, Allstate contends that when Key purchased insurance from Underwriter she manifested her intent to forgo coverage under the Allstate policy. In the alternative, Allstate argues that even if coverage is determined by the four criteria discussed above, Key failed to meet conditions (2) and (4).

## Discussion

Under ordinary principals of contract interpretation, a court must first examine the natural and plain meaning of a policy's language. *Dahl-Eimers v. Mutual of Omaha Life Ins. Co.,* 986 F.2d 1379, 1382 (11th Cir.1993). Under Florida law, if the terms of an insurance contract are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning, and, unless an ambiguity exists, a court should not resort to outside evidence or the complex rules of construction to construe the

contract. *Rigel v. National Casualty Co.,* 76 So.2d 285, 286 (Fla.1954); *Old Dominion Ins. Co. v. Elysee, Inc.,* 601 So.2d 1243, 1245 (Fla. 1 DCA 1992); *Southeastern Fire Ins. Co. v. Lehrman,* 443 So.2d 408, 408-09 (Fla. 4 DCA 1984); *see also Dahl-Eimers,* 986 F.2d at 1382; *United Nat'l Ins. Co. v. Waterfront New York Realty Corp.,* 994 F.2d 105, 108-09 (2d Cir.1993); *National Fidel. Life Ins. Co. v. Karaganis,* 811 F.2d 357, 361 (7th Cir.1987); *Carey v. State Farm Mutual Ins. Co.,* 367 F.2d 938, 941 (4th Cir.1966); *Imperial Casualty & Indemnity Co. v. Relder,* 308 F.2d 761, 764-65 (8th Cir.1962). This is so because the terms of a contract provide the best evidence of the parties' intent, *see McGhee Interests, Inc. v. Alexander Nat'l Bank,* 102 Fla. 140, 135 So. 545, 547 (1931), and where the language is plain a court should not create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions, *see Dahl-Eimers,* 986 F.2d at 1382; *Carey,* 367 F.2d at 941. Moreover, in determining whether a contract is ambiguous, the words should be given their natural, ordinary meaning, *Emergency Assoc. of Tampa v. Sassano,* 664 So.2d 1000, 1003 (Fla. 2 DCA 1995); *Continental Casualty Co. v. Borthwick,* 177 So.2d 687, 689 (Fla. 1 DCA 1965), and ambiguity does not exist simply because a contract requires interpretation or fails to define a term, *Dahl-Eimers,* 986 F.2d at 1382.

If, on the other hand, a court determines that the terms of an insurance contract are ambiguous, or otherwise not susceptible to a reasonable construction, a court may look beyond the contractual language to discern the intent of the parties in making the agreement. In general, ambiguities in contracts are construed

against their drafters. *Hurt v. Leatherby Ins. Co.,* 380 So.2d 432, 434 (Fla.1980). With respect to insurance policies in particular, which are often long, detailed, and difficult for most insureds to decipher, insurers, as drafters of insurance policies, have an obligation to state explicitly their intentions to limit coverage upon the happening of certain events or under certain circumstances. *Fireman's Fund Ins. Co. v. Vordermeier,* 415 So.2d 1347, 1350 (Fla. 4 DCA 1982); *National Merchandise Co., Inc. v. United Service Automobile Assoc.,* 400 So.2d 526, 530 (Fla. 1 DCA 1981); *see also Carey,* 367 F.2d at 941-42. Thus, ambiguities in insurance contracts generally are construed in favor of providing coverage. *Rigel,* 76 So.2d at 286; *Old Dominion,* 601 So.2d at 1245; *Lehrman,* 443 So.2d at 409; *Relder,* 308 F.2d at 764-65.

We find no ambiguity in the "newly acquired automobile" provision, and therefore, find it unnecessary to analyze the unstated intentions of the parties or the purposes of the provision. Under the plain language and natural reading of the provision, Allstate's insurance coverage automatically extends to an automobile as long as four conditions are met: (1) ownership of the car was acquired during the premium period; (2) Allstate insured all other vehicles that the insured owned; (3) the insured notified Allstate within 60 days of acquiring the car; and (4) the insured pays any additional premium. If Allstate intended to insure such automobiles only so long as no other specific insurance was taken out on them, or only until some other event occurs, then Allstate should have stated so expressly. *See Carey,* 367 F.2d at 941-42.

We recognize, however, that a court is required to give effect to the terms of a contract only if doing so is reasonable and does not contravene public policy. *National Merchandise Co.,* 400 So.2d at 530; *United States Fire Insurance Co. v. Morejon*, 338 So.2d 223, 225 (Fla. 3 DCA 1976). To that end, Allstate's newly acquired automobile clause does not provide coverage under circumstances that would lead to a double recovery. *See Pennsylvania National Mutual Casualty Insurance Co. v. Ritz,* 284 So.2d 474, 478 (Fla. 3 DCA 1973).

Allstate is liable for the bodily injury damages at issue in this case because all four conditions were met, and the Fiesta is not otherwise insured for bodily injury damage so as to afford Key a double recovery. With respect to the four criteria, compliance with conditions (1) and (3) is uncontested, and therefore need not be analyzed. We find that Key satisfied condition (2) because shw owned only one other car, the Astro, at the time she acquired the Fiesta, and the Astro was insured through Allstate. We also find that Key complied with her obligation to pay additional premium pursuant to condition (4).

Allstate first argues that requirement (2) was not satisfied because Key insured her Hornet through Underwriters prior to acquiring the Fiesta. An ordinary reading of the "newly acquired automobile" provision makes clear, however, that the four conditions of that provision are not triggered until an automobile is actually acquired. Thus, it is irrelevant whether Key insured vehicles with other insurance companies prior to acquiring the automobile at issue. The relevant sentence in the "newly acquired

automobile" provision reads: "This [newly acquired] auto will be covered if we insure all other private passenger or utility autos you own." "Insure" and "own" are in the present tense, indicating that coverage of the new automobile depends upon whether Allstate currently insures all other cars currently owned. Because the provision is irrelevant unless and until a car has been newly acquired, the earliest possible point at which anyone would assess whether other cars are "currently" insured elsewhere is at the point of acquisition. To read the provision retroactively, as Allstate urges us to do, is both unnatural and unreasonable. In this case, at the time Key acquired her Fiesta, the only other auto she currently owned was insured by Allstate, and therefore, she satisfied condition (2).

Allstate also argues that because Key insured the Fiesta through Underwriters, she did not insure all other vehicles with Allstate as required by condition (2). This argument is just as untenable. The "newly acquired automobile" provision clearly states that coverage of the newly acquired automobile depends on whether Allstate insures "all *other* private passenger or utility autos you own."[1] "Other" in this context means "different from

---

[1]Allstate cites a number of cases to support its argument that under the "newly acquired automobile" provision, all cars, including the newly acquired car, must be insured solely through Allstate. Those cases are clearly distinguishable, however, because the relevant insurance provisions in the cited cases do not contain the word "other." The policy language in those cases state that coverage attaches if the company insures "all private passenger ... automobiles." *See Pennsylvania National Mutual Casualty Insurance Co. v. Ritz,* 284 So.2d 474, 477 (Fla. 3d DCA 1973); *see also Michel v. Aetna Casualty & Surety Co.,* 252 F.2d 40, 41 (10th Cir.1958); *See Cook v. Suburban Casualty Co.,* 54 Ill.App.2d 190, 203 N.E.2d 748, 750-51 (1964); *Beck v. Aetna Casualty and Surety Co.,* 38 Colo.App. 77, 553 P.2d 397, 398

that or those implied or specified." *The American Heritage Dictionary* 931 (1981). Because the newly acquired automobile is the only auto specified, it necessarily is not an "other" auto. Therefore, the requirement that Key insure her other autos with Allstate applies only to autos *other* than the newly acquired one, and the fact that Key partially insured the Fiesta through Underwriters is irrelevant to whether she satisfied the plain language of condition (2).

With respect to condition (4), Allstate argues that Key never paid any additional premium for insuring the Fiesta from January 19, 1991, the date of acquisition, until March 5, 1991, the date Allstate first requested and Key agreed to pay additional premium for insuring the Fiesta with Allstate.[2] This argument misconstrues how newly acquired automobile coverage works. As long as the other conditions are met, coverage on newly acquired automobiles automatically attaches at the time of acquisition and extends for the earlier of 60 days or until the insured notifies Allstate of acquisition but refuses to pay any additional premium which is requested. Moreover, under Florida law, an insurer may cancel existing coverage for non-payment of premium only after giving the insured "notice sufficiently in advance of the due date to afford the insured a reasonable opportunity to make payment without lapse

---

(1976).

[2]The costs of covering the additional liability for newly acquired automobiles from the time of acquisition until additional premium is paid is actuarially accounted for in pricing the underlying policies. Thus, any argument that suggests that the insurance companies are "giving away" insurance during this period of time is disingenuous.

or interruption of continuous coverage." *Hepler v. Atlas Mutual Ins. Co.,* 501 So.2d 681, 686 (Fla. 1 DCA 1987); *see also Allstate Insurance Co. v. Crawford,* 365 So.2d 408, 409 (Fla. 3 DCA 1979).

In this case, Key's coverage under the newly acquired automobile provision began on the date of acquisition, January 19, 1991. She reported her acquisition within 60 days, and began paying additional premium for the additional coverage on March 5, 1991. She was never notified that an additional premium was due earlier, or that Allstate was canceling her coverage. Therefore, Key complied with condition (4) and the Fiesta was covered as a newly acquired automobile under the Allstate policy on January 23, 1991, the day of the accident.

In sum, we hold that the "newly acquired automobile" provision in Key's Allstate policy is clear and unambiguous, and that Key satisfied the four conditions necessary for coverage to attach. Because neither the language used in the policy nor independent notification from Allstate notified Key that the insurance coverage had been canceled, Allstate is liable for the bodily injury damages arising from the accident on January 23, 1991. Accordingly, the order of the district court is reversed, and this case is remanded for a calculation of damages consistent with this opinion and attorney's fees.

REVERSED and REMANDED.


COX, Circuit Judge, dissenting:


The district court concluded that Key had demonstrated an

intention not to insure her Ford Fiesta with Allstate, but rather to insure it with Underwriters. The court found that Key had stated that she chose to have insurance with one company for one car and with another company for another car because she thought it would be cheaper.

The district court understood Florida law to hold that the intent of the insured is controlling under circumstances such as these, citing <u>Pennsylvania Nat'l Mutual Casualty Ins. Co. v. Ritz</u>, 284 So.2d 474 (Fla. 3d DCA 1973). My understanding of Florida law is the same as that of the district court. I would affirm for the reasons stated in the district court's well-reasoned memorandum opinion.