**In re Eli BARON, Debtor.**

**Mary Armbruster Baron, Plaintiff,**

**v.**

**Eli Baron, Defendant.**

**Bankruptcy No. 00–00867–9P7.**
**Adversary No. 00–771.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

May 31, 2002.

Ronald L. Stetler, Naples, Florida, for plaintiff.

Roger L. Waltemyer, Fort Myers, Florida, for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration in this chapter 7 case is a challenge of the dischargeability of certain debts of Eli Baron (Debtor). The claims of non-dischargeability are set forth in a two count complaint filed by Mary Armbruster Baron (Ms. Baron), the former spouse of the debtor. Her claim in Count I is based on the allegation that certain monetary obligations imposed on the Debtor by the Final Judgment of Dissolution of Marriage (Final Judgment) are in the nature of support, thus excepted from the discharge pursuant to 11 U.S.C. § 523(a)(5). While the obligations are not specified in the Complaint, it refers to a Mediation Agreement, which was incorporated into the Final Judgment. Ms. Baron asserts in Count II that the non-specified obligations

are also non-dischargeable pursuant to 11 U.S.C. § 523(a)(15). The Debtor filed a Motion to Dismiss the claim in Count II, which was granted by this Court with the entry of an Order on June 26, 2001. With respect to Count I, the Debtor filed his Answer and basically contended that the claim is within the protection of the general discharge. On October 18, 2001, the Debtor filed a Motion for Summary Judgment, which was countered by the same Motion by Ms. Baron.

On January 4, 2002, this Court granted in part and denied in part the Motions for Summary Judgment and ruled that the following obligations imposed on the Debtor are non-dischargeable pursuant to § 523(a)(5) of the Bankruptcy Code.

(1) All payments of child support and related support as set forth in the Mediation Agreement, paragraph 3;

(2) payment of alimony as referenced in paragraph 4 of the Mediation Agreement; and

(3) the obligation to purchase a home for Ms. Baron as referenced in paragraph 1 of the Mediation Agreement.

With respect to the other obligations that Ms. Baron seeks a determination that the same are non-dischargeable, this Court denied summary judgment and scheduled the remaining issues for trial.

In the Order on the Motions for Summary Judgment, this Court found that the Mediation Agreement provides as follow:

(1) Debtor shall purchase a home for Ms. Baron free and clear of any liens for a purchase price not less than $450,000.00 or in the alternative, if the home is not purchased, to pay the same amount to Ms. Baron (Paragraph 1 of the Mediation Agreement);

(2) The Debtor shall pay Ms. Baron an unspecified amount of temporary support which amount however, was fixed by the circuit court until the home was purchased or the amount of $450,000 was paid if the home was not purchased (Paragraph 1 of the Mediation Agreement);

(3) Paragraph 3 of the Mediation Agreement required the Debtor to pay detailed obligations for child support of $3,000 per month per child until each child reached the age of 18 or is between age 18 and 19 and still in high school, up to graduation or the 19th birthday whichever last occurs. In addition, the Debtor was required to pay sums necessary for clothing, medical, and dental insurance; preschool and school expenses; and college education, tuition, room and board, fees, books, supplies, and reasonable transportation. Finally, in order to assure that these obligations were met, the Debtor was required to maintain life insurance in an amount sufficient to provide the necessary support for the children as set forth above.

(4) Paragraph 4 of the Mediation Agreement entitled "Alimony," required that Debtor to pay to Ms. Baron non-modifiable permanent alimony of $1,000.00 per month which shall terminate only upon her re-marriage or death, the Debtor's death or 13 years from the date of the Mediation Agreement, whichever occurs first. The Mediation Agreement provided that these obligations shall start at once when Ms. Baron moves in the house or receives the $450,000 in the alternative but in no event not later than 6 months from the date of the Mediation Agreement. The alimony shall, be deductible to the Debtor and taxable to Ms. Baron.

(5) Paragraph 8 of the Mediation Agreement entitled "Equitable Distribution," required the Debtor to:

(a) pay to Ms. Baron any tax refund if any for the year 1992 based on claimed net operation loss by the Debtor. In the event there is no tax refund or if the Debtor did not file for a refund that Debtor is required to pay Ms. Baron the net operating loss of $477,231; on July 1, 1997 $239,615; and on July 1, 1998, the same amount.

(b) pay to Ms. Baron as equitable distribution the sum of $500,000 with interest at the rate of 4% per annum for 5 years in the following manners (1) $2,000 for the principal within six months from the date of the agreement or closing the residence to be purchased if not purchased the payment of $450,000 whichever occurs first. (2) On January 1, 1997 for the principal reduction annual payments $50,000 each year until the entire $500,000 is paid plus accrued interest. If there is still an amount remaining unpaid the balance shall be paid in full plus interest.

(6) Lastly, Paragraph 9 of the Mediation Agreement provides that Debtor shall not attempt to discharge any of these obligations owed to Ms. Baron.

Plaintiff's Exh. 1.

The Court also found that the Affidavit by the Debtor indicated that he made the following payments to Ms. Baron: (1) "$500,000 pursuant to the Mediation Agreement as another distribution of assets, not as support," Paragraph 13 of Affidavit of Debtor; (2) $205,000 [sic] proceeds of the sale of Lot 36 went to Ms. Baron "as a distribution of assets, not as support," Paragraph 14 of Affidavit of Debtor; and (3) $933,314 proceeds from the sale of condominium Unit 402 as "another distribution of marital assets, and not for support," Paragraph 15 of the Affidavit of Debtor. The Affidavit filed by Ms. Baron did not acknowledge any payments referenced by the Debtor. In light of the foregoing, this Court was unable to determine whether these monies should be credited against any of the nondischargeable obligations.

The precise issues before this Court are the following: (1) whether or not the obligations as set forth in Paragraph 8 of the Mediation Agreement entitled "Equitable Distribution" are non-dischargeable and (2) whether or not any of the payments set forth in the Affidavit of the Debtor should be credited against the non-dischargeable obligations. At the duly scheduled trial, Ms. Baron and her divorce attorney, Mr. Lombardo testified. The Debtor neither attended nor testified at the trial.

Based on the record and the testimony adduced at the trial, this Court finds as follows. Ms. Baron and the Debtor were married in 1984 and divorced in 1995, although the divorce proceedings were initiated in 1993. They have three children from their marriage. The Debtor was an "entrepreneur developer," whose corporations owned and operated several hotels, golf course communities, and a corporate jet. Apparently the Debtor was very successful, as the Debtor and Ms. Baron enjoyed a very expensive lifestyle.

As part of the marriage dissolution proceedings, Ms. Baron and the Debtor entered into the Mediation Agreement. As referenced above, the Mediation Agreement directs the Debtor to make certain alimony payments and child support payments; supply Ms. Baron with a house; and provide for other "equitable" payments to Ms. Baron. Moreover, the Mediation Agreement specifically states as

follows: "The Husband [Debtor] further acknowledges that the Wife's [Ms. Baron's] support needs and those of the children are being partially met by the equitable distribution award." *See* Paragraph 9 of the Mediation Agreement.

At the trial, Ms. Baron introduced into evidence a series of pleadings filed in the state court divorce proceedings which show that the Debtor failed to abide by the terms of the Mediation Agreement (*see* Plaintiff's Exhs. 3 – 10). Specifically, the Debtor failed to provide Ms. Baron with a house and therefore, by Order of the Circuit Court, the Debtor was ordered to pay Ms. Baron the sum of $800,000 in lieu of the original sum of $450,000. *See* Plaintiff's Exh. 5. Thereafter, the Circuit Court entered another Order approving a stipulation and modification to the original Mediation Agreement where Ms. Baron acknowledged receipt of $215,000 from the Debtor as a credit towards the $800,000 payment for the house and where the Debtor again agreed to secure a house in the amount of $450,000, with the balance owed (of $135,000) to be paid to Ms. Baron. This Order was entered on April 22, 1992. *See* Plaintiff's Exh. 6.

The record reflects that after the modification, the Debtor failed to secure a home for Ms. Baron and failed to make the equitable distribution payments to Ms. Baron pursuant to Paragraph 8(b) of the Mediation Agreement. Therefore, Ms. Baron secured a Final Judgment against the Debtor on February 11, 1998 in the amount of $1,413,919, which amount represented "all sums due the Former Wife for equitable distribution and provision of residences pursuant to the Final Judgment of Dissolution of Marriage as modified." *See* Plaintiff's Ex. 7, paragraph 2. The Final Judgment was recorded in the Public Records of Collier County, Florida.

After the entry of the Final Judgment, it appears that there were two subsequent "Stipulation and Agreement" entered into by the Debtor and Ms. Baron regarding the disposition of certain houses in order to satisfy the outstanding obligation due to Ms. Baron regarding the housing of Ms. Baron and the children. *See* Plaintiff's Exhs. 9 and 10. It is without dispute that on September 3, 1999, the Debtor paid the sum of $500,000 to Ms. Baron as partial satisfaction of the Final Judgment.

Finally, with respect to the remaining "payment" of $933,314, the testimony of Ms. Baron is persuasive. In the Affidavit of the Debtor, the Debtor states that Ms. Baron received the sum of $933,314 from the sale of a condominium. However, the testimony of Ms. Baron and the documents submitted into evidence by Ms. Baron reflect that Ms. Baron netted the sum of $155,820 from the sale of the condominium. *See* Plaintiff's Exhs. 13 and 14.

Ms. Baron seeks to except from the general discharge certain obligations under the divorce proceeding based on 11 U.S.C. § 523(a)(5), which provides as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or

support unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

■ Federal law determines the question of whether a given debt is in the nature or support. *In re Strickland,* 90 F.3d 444 (11th Cir.1996). When determining dischargeability of a debt owed to a former spouse pursuant to a divorce decree, a court's task is to determine what function the award was intended to serve, regardless of the manner within which the debt is designated. A court must look beyond the decree's language to the intent of the parties and to the substance of the obligation to determine the true nature of the obligation. *In re Sampson,* 997 F.2d 717 (10th Cir.1993).

■ Courts generally agree that in considering whether or not a provision in a divorce decree is in fact alimony, maintenance or support, it is proper to consider the following factors:

(1) whether the obligation under consideration is subject to contingencies such as death or remarriage;

(2) whether the payment was fashioned in order to balance disparate incomes of the parties;

(3) whether the obligation is payable in installments or in a lump sum;

(4) whether there are minor children involved in the marriage requiring support;

(5) the respective physical health of the spouse, and the level of education;

(6) whether, in fact, there was a need for support at the time of the circumstances of the particular case;

(7) whether the obligation imposed is enforced by contempt proceedings (alimony or by levy and execution, or just a money judgment); and

(8) whether the obligation is fixed and final (no alimony) or subject to readjustment, either upward or downward, depending on the changed circumstances of the parties.

*In re Bowsman,* 128 B.R. 485, 487 (Bankr. M.D.Fla.1991).

■ Additionally, courts accord a deference to the express intention of the parties stated in the stipulation entered into at the time of the stipulation as executed concerning the nature of the obligation. *Cummings v. Cummings,* 244 F.3d 1263 (11th Cir.2001); *In re Gianakas,* 917 F.2d 759 (3d Cir.1990). The burden to prove this intent is by a preponderance of the evidence. *Cummings, supra.*

■ In *Cummings,* the Eleventh Circuit held that although the factors cited above are relevant to a court's inquiry but that "the touchstone for dischargeability under § 523(a)(5) is the intent of the parties. In determining whether a particular obligation is in the nature of support, '[a]ll evidence, direct or circumstantial, which tends to illuminate the parties subjective intent is relevant.' " *Cummings, supra* at 1266 (citations omitted). Similar to the facts in this case, in *Cummings,* the state court indicated that some of the portion of the "equitable distribution" was to function as support to the spouse. And, the Eleventh Circuit went on to note "because a property division often achieves the same goal as a support obligation, state courts do not rigidly distinguish between the two." *Cummings, supra* at 1266 (citations omitted).

Counsel for the Debtor argues that the Mediation Agreement is a contract, and under Florida law is subject to interpretation like any other contract. Specifically, a court must first examine the natural and plain meaning of the language of the contract. *See Key v. Allstate Insurance Company,* 90 F.3d 1546 (11th Cir.1996). In

this instance, counsel for the Debtor argues that the plain meaning of "Equitable Distribution" is just that, equitable distribution. However, the Debtor fails to acknowledge that he also plainly states the following in Paragraph 9 of the Mediation Agreement "The Husband [Debtor] further acknowledges that the Wife's [Ms. Baron's] support needs and those of the children are being partially met by the equitable distribution award."

■ In light of the foregoing, this Court must determine whether or not the obligations arising under the label "Equitable Distribution" are in actuality in the nature of "alimony, maintenance or support." With respect to the various factors, this Court makes the following determinations. With respect to factors (1), (4), (7) and (8), the Mediation Agreement provided that the alimony portion of $1,000, which is not in dispute, would terminate upon certain events, i.e., wife's remarriage, wife's death, husband's death, etc., that the alimony was "non-modifiable permanent alimony," and that the Husband waived any right to have the alimony adjusted downward. The Mediation Agreement also provided, in paragraph 8(c) that a default by the Debtor in payments under the *Equitable Distribution* section would result in nullifying and canceling the non-modifiable provision of the alimony obligation (emphasis supplied). Although it appears that Section 8(c) refers to any payment of the equitable distribution would tie into the alimony section of the Mediation Agreement, it appears that the parties were contemplating the $500,000 as additional support, since the majority of section 8(c) refers to the $500,000 payment. Section 23 of the Mediation Agreement provides that a judgment or other enforcement proceeding could result against any party who defaults under the agreement. With respect to factor (2), the testimony of Ms. Baron reflects that during her marriage with the Debtor she devoted her time to raising the children and did not engage in any meaningful employment. With respect to factor (3), the IRS reimbursement was to be in two lump sum payments, while the $500,000 payment was to be in monthly payments of $2,000 and $50,000 payments annually. With respect to factor (5), the health of the spouse appeared to be fine and the level of education was not discussed at trial. With respect to factor (6), Ms. Baron's testimony was that she needed support from the Debtor, as she did not appear to have any meaningful employment. Finally, this Court is satisfied that it was the intent of the parties that a portion of the Equitable Distribution be in the nature of support, and therefore, non-dischargeable, based on paragraph 9 of the Mediation Agreement and the unrebutted testimony of Ms. Baron.

Moreover, in the present instance, just like in *Cummings,* the relevant portion of the Mediation Agreement dealing with the $500,000 obligation described as equitable distribution, also indicates to some respect, that it might be in the nature of support. In the absence of any contravening evidence by the Debtor, this Court is satisfied that the entire award of $500,000 (referenced in Paragraph 8(b) of the Mediation Agreement) is deemed to be support, and thus within the exception of § 523(a)(5) of the Code. Ms. Baron admits that the Debtor made one payment of $50,000 against the $500,000 due and therefore, the outstanding balance is $450,000, plus interest.

■ However, with respect to the tax refund, this Court determines that those sums were in the nature of an equitable distribution, as Ms. Baron admits in her testimony that those funds were the only "property" that could be divided between the Debtor and Ms. Baron, and therefore

this Court is satisfied that the same are dischargeable.

 With respect to the credits and the housing issue, this Court is satisfied that the Debtor's failure to provide the initial house at $450,000 or payment in lieu of the house, coupled with the various binding agreements and orders entered in the divorce proceeding, that the Debtor in fact agreed to the higher number of $800,000 for payment of a house to Ms. Baron. Additionally, this Court is satisfied that based on the record, the $215,000 payment and the $500,000 payment should be a credit for the Debtor against the outstanding balance owed on the $800,000, leaving a balance owed of $334,270, according to Plaintiff's Exh. 14. However, this Court is satisfied that the $155,820 payment from the sale of the condominium should be applied against the outstanding balance on the home obligation, and therefore, the amount owed to Ms. Baron with respect to the home obligation is $178,450.

Finally, this Court is satisfied that the attorneys' fees and costs, as rendered by a Final Judgment for Attorney Fees and Costs, in the principal amount of $155,000, plus applicable interest at the interest rate as prescribed under Florida law, is also non-dischargeable.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the following obligations are found to be in the nature of support and therefore nondischargeable:

a. The $800,000 owed for the house less the credits referenced above, leaving a balance of $178,450, pursuant to Paragraph 1 of the Mediation Agreement, as subsequently modified;

b. Payment in the amount of $500,000 to Ms. Baron, less $50,000 credit, for a total of $450,000 in principal, plus

interest at 4% pursuant to Paragraph 8(b) of the Mediation Agreement; and

c. Attorneys' fees and costs as set forth in the Final Judgment for Attorney Fees and Costs, in the principal amount of $155,000, plus applicable interest at the interest rate as prescribed under Florida law.

It is further

ORDERED, ADJUDGED AND DE-CREED that the IRS obligation, as set forth in Paragraph 8(a) of the Mediation Agreement is found not to be in the nature of support and therefore is discharged. It is further

ORDERED, ADJUDGED AND DE-CREED that a separate final judgment shall be entered in favor of Ms. Baron and against the Debtor with respect to the obligations found to be nondischargeable.