[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11214
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cv-02607-RAL-EAJ

T. PATTON YOUNGBLOOD, JR.,

Plaintiff-Appellant,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 28, 2015)

Before HULL, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

T. Patton Youngblood, Jr., appeals the district court's grant of summary

judgment for the defendant, State Farm Mutual Automobile Insurance Company

("State Farm"), on Youngblood's lawsuit seeking a declaratory judgment and

damages for breach of contract, which was filed in state court and then removed to federal court by State Farm.  The lawsuit stems from an accident that occurred on December 24, 2002, involving a 1996 Lexus LS400 that was titled to Youngblood's ex-wife, Angela Youngblood ("Angela"), and that resulted in the death of the driver of the other vehicle involved in the accident.  About one month earlier, Youngblood had brought the Lexus to a used car dealership, Extreme Auto Sales ("Extreme"), to be sold on his behalf.  At the time of the accident, the Lexus was being driven by an Extreme employee, who had taken the car home for the night.   In a separate lawsuit brought by the estate of the driver of the other vehicle, Youngblood was found vicariously liable for over $100,000 in damages.

At the time of the accident, Youngblood had an insurance policy with State Farm that covered his 2001 GMC Yukon ("the insurance policy").  In the district court, Youngblood maintained that, on December 24, 2002, the Lexus was covered under the "newly acquired car" provision of the insurance policy, which provided automatic coverage for a newly acquired car for 31 days after its "delivery to you or your spouse."  Youngblood contended that, pursuant to the terms of his marital settlement agreement with Angela, he did not acquire use and possession rights in the Lexus until December 22, 2002, and thus "delivery" did not occur until that date, rendering the Lexus covered under the newly acquired car provision on December 24, 2002.  The district court disagreed, concluding that the Lexus had

2

been delivered to Youngblood on November 5, 2002, when he took possession of it from Angela, and that the newly acquired car coverage expired on the thirty-second day thereafter, December 7, 2002. On appeal, Youngblood contends that the district court erred by treating the word "delivery" in the newly acquired car provision as unambiguous, and he maintains that a genuine issue of material fact existed as to when the delivery occurred. After careful review, we affirm.

We review a district court's grant of summary judgment de novo, viewing all the evidence and drawing all reasonable factual inferences in favor of the nonmoving party. Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1321 (11th Cir. 2014). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The interpretation of a provision in an insurance contract is a question of law, which we review de novo. Stephens, 749 F.3d at 1321.

The parties do not dispute that, in this diversity case, Florida law governs the interpretation of the insurance policy. See Sphinx Int'l Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d 1224, 1227 (11th Cir. 2005). Under Florida law, if the terms of an insurance contract are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning, and, unless an ambiguity exists, the court should not resort to outside evidence or complex rules of construction. Key v. Allstate Ins. Co., 90 F.3d 1546, 1549 (11th Cir. 1996)

3

(citing, inter alia, Rigel v. Nat'l Cas. Co., 76 So. 2d 285, 286 (Fla. 1954); Old Dominion Ins. Co. v. Elysee, Inc., 601 So. 2d 1243, 1245 (Fla. 1 DCA 1992); and Southeastern Fire Ins. Co. v. Lehrman, 443 So. 2d 408, 408-09 (Fla. 4 DCA 1984)).  In deciding whether a contract is ambiguous, words should be given their natural, ordinary meaning.  Id.  Ambiguity does not exist simply because a contract requires interpretation or fails to define a term.  Id.  When interpreting insurance contracts, a court may "consult references commonly relied upon to supply the accepted meanings of words," such as dictionaries.  Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291-92 (Fla. 2007).

Here, the district court noted that the term "delivery" was not defined in the insurance policy, so it looked to Webster's Third New International Dictionary for the plain and common meaning of the word, which included "transfer of the body or substance of a thing."  Applying that definition to the newly acquired car provision in the insurance policy, the district court concluded that "delivery of the car to you" meant transfer of the physical car to Youngblood.[1]  The district court did not err in concluding that the term "delivery" was unambiguous and in giving that word its plain and common meaning.  See Key, 90 F.3d at 1549; Garcia, 969 So. 2d at 291-92; see also Dixie Ins. Co. v. Detamore, 515 So. 2d 1390, 1392

---

[1] Consistently, the Oxford English Dictionary defines "delivery" as "[t]he act of giving up possession of; surrender" and "[t]he action of handing over, or conveying into the hands of another," both of which suggest the transfer of a physical object. *Delivery*, Oxford English Dictionary (Sept. 2015).

(Fla. 5 DCA 1987) (concluding that automatic coverage for a newly acquired car began when the insured took control and possession of the car, not on the earlier date when she had paid for it, or on the later date when she received the title).

Nor did the district court err in holding that delivery occurred on November 5, 2002. In making that determination, the district court relied on the undisputed facts that, in November 2002, Youngblood and Angela were in the process of dissolving their marriage. During the marriage, Angela had driven the Lexus, and had insured the Lexus with State Farm. While the title was solely in Angela's name, Youngblood and Angela had originally purchased the Lexus with a loan, on which Youngblood was the sole obligor. When Youngblood brought the Lexus to Extreme in mid-November 2002, he still owed $16,500 on the loan. As she and Youngblood were dissolving the marriage, Angela decided to buy a less expensive vehicle that would be safer for her and Youngblood's young daughter. On November 5, 2002, Angela purchased a 1999 Isuzu Rodeo from a car dealership. That same day, Youngblood met Angela at the dealership, where he picked up the Lexus. Angela never again took possession of the Lexus, and transferred her insurance policy with State Farm to the Isuzu. These undisputed facts support the district court's conclusion that Youngblood took physical possession of the Lexus on November 5, 2002, and that the "delivery" occurred on that day.

Youngblood argues that the term "delivery" could reasonably be construed to have occurred, instead, when he became the legal owner of the Lexus, upon his receipt of exclusive use and possession rights in the vehicle. He bases his argument on the terms of his marital settlement agreement with Angela, which provided that:

> [Angela] will transfer all of her right, title and interest in [the Lexus] to [Youngblood] and [Youngblood] will pay all future payments relating to the aforesaid Lexus, promptly when due, until the promissory note is paid in full. However, [Angela] shall be entitled to the use and possession of said vehicle until thirty (30) days following receipt of the One Hundred Seventy Five [Thousand] Dollars and No/100 ($175,000.00) from [Youngblood] in accordance with this Agreement in order for her to obtain appropriate transportation for herself and the minor child. During the remainder period of the aforesaid term of payment of the promissory note on the Lexus, [Youngblood] shall have exclusive use and possession of the said Lexus and [Youngblood] shall be solely responsible for any insurance, maintenance and other expenses.

We are unpersuaded. It is undisputed that Angela received the $175,000 from Youngblood on November 21, 2002. Youngblood maintains that, reading the insurance policy in concert with the marital settlement agreement, "delivery" could reasonably be interpreted to have occurred on the thirty-first day thereafter, December 22, 2002, when Youngblood obtained exclusive use and possession rights in the Lexus. However, the district court correctly determined that, because the term "delivery" in the insurance policy was unambiguous, there was no need to refer to extrinsic evidence to determine its meaning. See Key, 90 F.3d at 1549.

Moreover, Youngblood's interpretation of "delivery" is contrary to the plain and common meaning of the word, in that, on December 22, 2002, the "substance or body" of the Lexus was not transferred in any way. See Taurus Holdings, Inc. v. U.S. Fid. and Guar. Co., 913 So. 2d 528, 532 (Fla. 2005) ("courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties") (quotation omitted). Instead, the Lexus remained at Extreme, where Youngblood had earlier brought it to be sold on his behalf.

Youngblood also argues that, because the insurance policy defines a newly acquired car to include "an added car purchased by or leased to you or your spouse," the newly acquired car provision is most reasonably read as providing automatic coverage when an insured acquires the legal right to use and possess the added car, which did not occur in this case until December 22, 2002. Again, Youngblood's interpretation of the meaning of "delivery" is contrary to the plain and common meaning of that word. Additionally, the undisputed facts show that Youngblood, in fact, had use and possession of the Lexus on November 5, 2002, and that Angela had ceded use and possession on that date.

Finally, Youngblood points to the deposition testimony of State Farm Corporate Representative Kenneth Lee White that, to insure a vehicle, one must have an ownership interest in the vehicle, with Youngblood arguing that, prior to December 22, 2002, he had no insurable interest in the Lexus. Youngblood's

7

argument is contrary to Florida law, which provides that a person has an insurable interest in property, even if he does not have an ownership interest in it, if he has an "actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." Overton v. Progressive Ins. Co., 585 So. 2d 445, 448 (Fla. 4 DCA 1991) (quoting Fla. Stat. § 627.405(2)) (quotation omitted). The undisputed facts show that, on November 5, 2002, Youngblood owed at least $16,500 on the promissory note for the Lexus. Moreover, in mid-November 2002, he brought the Lexus to Extreme to be sold on his behalf, and he expected to obtain ownership and exclusive use and possession rights in the vehicle pursuant to the terms of the marital settlement agreement. Based on these facts, Youngblood had a substantial economic interest in the preservation of the Lexus, which was insurable under Florida law. Accordingly, we affirm the district court's grant of summary judgment for State Farm.

**AFFIRMED.**