TYR TACTICAL, LLC, Plaintiff-Appellant,

v.

PROTECTIVE PRODUCTS ENTERPRISES, LLC, Point Blank Enterprises, Inc., Defendants-Appellees.

No. 16-16747

United States Court of Appeals, Eleventh Circuit.

(October 16, 2017)

Todd A. Davidovits, Graham L.W. Day, Keith Jude Grady, Polsinelli PC, Saint Louis, MO, Jeffrey H. Kass, Polsinelli, PC, Denver, CO, Brian Michael Torres, Brian M. Torres, P.A., Miami, FL, for Plaintiff-Appellant

Brian Ercole, Morgan Lewis & Bockius, LLP, Miami, FL, Troy S. Brown, Elisa P. McEnroe, Morgan Lewis & Bockius, LLP, Philadelphia, PA, David Bruce Salmons, Morgan Lewis & Bockius, LLP, Washington, DC, for Defendant-Appellee Protective Products Enterprises, LLC

Brian Ercole, Morgan Lewis & Bockius, LLP, Miami, FL, Troy S. Brown, Elisa P. McEnroe, Morgan Lewis & Bockius, LLP, Philadelphia, PA, for Defendant-Appellee Point Blank Enterprises, Inc.

Before JULIE CARNES and JILL PRYOR, Circuit Judges, and CONWAY,* District Judge.

PER CURIAM:

TYR Tactical, LLC ("TYR") agreed to bid with Protective Products Enterprises, LLC and Point Blank Enterprises, Inc., (collectively "Point Blank") on a large government contract for the design and production of tactical vests with body armor for use by the United States military. TYR and Point Blank memorialized their arrangement in a written Teaming Agreement (the "Agreement"), provisions of which are at issue in this case. Ultimately, the government did not award the parties a contract. TYR then sued Point Blank, claiming that Point Blank had breached the Agreement by refusing to file a bid protest and by contributing to another party's design. Point Blank moved for

* Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

summary judgment, and the district court granted its motion. The district court concluded, as a matter of law, that Point Blank had not breached the Agreement and that even if Point Blank had breached the Agreement, TYR's claims for lost profits were barred by an exculpatory clause in the Agreement.

On appeal from the district court's grant of summary judgment for Point Blank, TYR argues that the district court erred in determining that: (1) Point Blank did not breach the Agreement's bid protest provision, (2) Point Blank did not breach the Agreement's exclusivity provision, (3) Point Blank did not breach the Agreement's best efforts provision, and (4) the Agreement's limitation of liability provision was enforceable and barred TYR from recovering lost profits with respect to its claims for intentional and willful breach of contract. For the reasons stated below, we affirm the district court.

We review *de novo* the district court's grant of summary judgment, construing the facts and all reasonable inferences therefrom in favor of the nonmoving party. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). We also review *de novo* the district court's contract interpretation. *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015).

■ First, we conclude that Point Blank did not breach the Agreement's bid protest provision. This provision states:

> In the event the Prime Contractor or the Subcontractor concludes that a protest is in order, ... the Prime Contractor shall be the protesting party, supported as appropriate by the Subcontractor.[1]

Agreement § 5(d) (Doc. 65-1).[2] We do not read this language as requiring Point Blank to file a protest upon TYR's demand. Instead, we agree with the district court that the plain language of the provision delineates the parties' respective roles in the event that a protest is filed, regardless of which party determines that a protest is in order. After all, the provision does not state that Point Blank "shall" file a protest; rather, it states that Point Blank "shall be the protesting party." Agreement § 5(d). *See Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996) ("Under Florida law, if the terms of a[ ] ... contract are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning. . . .").[3]

The placement of this provision in the section of the Agreement specifying the Subcontractor's responsibilities, as well as the broad authority given to Point Blank to control the parties' bid, reinforces our conclusion. As the district court noted, TYR's proposed reading of the bid protest provision would render ineffective other provisions in the Agreement—for example, those giving Point Blank absolute authority regarding submission of the proposal, negotiation with the government, and termination of the Agreement. *See, e.g.*, Agreement §§ 4(a), 4(b), and 9(g); *see Premier Ins. Co. v. Adams*, 632 So.2d 1054, 1057 (Fla. Dist. Ct. App. 1994) ("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable."). Accordingly, we conclude that Point Blank did not breach the Agreement when it failed to file a bid protest despite TYR's request.

---

**1.** Under the Agreement, Point Blank is the "Prime Contractor," and TYR is the "Subcontractor."

**2.** All citations in the form "Doc. __" refer to the district court docket entries.

**3.** The parties agree that Florida law controls our interpretation of the Agreement.

■ Second, we agree with the district court that Point Blank did not breach the exclusivity provision of the Agreement. This provision states:

> Under this Agreement, each of the Parties shall be exclusively restricted from individually or jointly with one or more third parties entering into an agreement with or offering any other proposal to the Government with respect to the Project.

Agreement § 1(c). Point Blank was thus prohibited from (1) entering into an agreement with or (2) offering any other proposal to the government with respect to the project at issue. Here, Point Blank did neither. We reject TYR's argument that the exclusivity provision was intended to prevent the parties from *supplying* any other entity with products for use on competing designs because such an interpretation is contrary to the plain language of the provision. Thus, we conclude that Point Blank did not breach the Agreement when it supplied a third party who in turn contributed to a competing design.

■ Third, the district court correctly determined that Point Blank did not breach the best efforts provision of the Agreement. The best efforts provision states:

> Prime Contractor shall use its best efforts after submission of the Proposal to the Government to obtain the Contract.

Agreement § 4(b). TYR argues that this provision required Point Blank to file a bid protest.[4] But as the district court observed, such a broad reading is irreconcilable with other provisions in the Agreement giving Point Blank unilateral control over the parties' submission. *See, e.g.,* Agreement §§ 4(a), 4(b), and 9(g); *see City of Homestead v. Johnson,* 760 So.2d 80, 84 (Fla. 2000) ("[W]e rely upon the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions thereof."). Therefore, we conclude that Point Blank did not breach the best efforts provision when it failed to a file a bid protest despite TYR's request.

Fourth, because we hold that Point Blank did not breach the Agreement, we need not address whether the Agreement's exculpatory clause bars TYR from recovering lost profits on its claims.

For the reasons set forth above, we affirm the district court's judgment.

**AFFIRMED.**

---

4. On appeal, TYR also argues that Point Blank failed to use best efforts by supplying materials for a competing design. TYR made only passing references to this theory before the district court in its memorandum opposing summary judgment. The district court thus lacked an adequate opportunity to address this argument, so we will not address it now. *See Access Now, Inc. v. Southwest Airlines Co.,* 385 F.3d 1324, 1332-35 (11th Cir. 2004) (explaining that absent exceptional circumstances, we will not consider arguments that are raised for the first time on appeal).