[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-12343
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cv-00060-AW-GRJ

DONALD CALVERT,
Individually and as Assignees
other Travis A. Stewart
other Shelly M. Stephens,
MARIAM MARTIN,
Individually and as Assignees
other Travis A. Stewart
other Shelly M. Stephens,

Plaintiffs - Appellants,

versus

SAFECO INSURANCE COMPANY OF ILLINOIS,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 11, 2021)

Before JORDAN, JILL PRYOR and FAY, Circuit Judges.

PER CURIAM:

Donald Calvert and Mariam Martin were injured in a single-truck accident. They sued Shelly Stephens, the truck's owner, and Travis Stewart, the truck's driver. One of Stephens's insurers, Safeco Insurance Company of Illinois, denied coverage for the accident. Stephens agreed to entry of judgment against her and assigned to Calvert and Martin all rights under her Safeco insurance policy. Calvert and Martin then filed this lawsuit, seeking a declaratory judgment that the Safeco policy covered the accident. The district court granted summary judgment in Safeco's favor. Calvert and Martin appeal, arguing that the district court erred in construing the terms of the policy. After careful review, we affirm.

I.

Most of the facts in this case are not in dispute. Shelly Stephens owned a Ford truck, a horse trailer, and a utility trailer, all of which were insured by a Safeco policy. That policy provided bodily injury and property damage liability, medical payments, personal injury protection, uninsured motorists, comprehensive, collision, loss of use, and roadside assistance coverage. The policy specifically provided liability coverage for "[a]ny person using [Stephens's] covered auto with [her] express or implied permission" and expressly excluded from coverage "[a]ny

2

vehicle, other than [a] covered auto." Doc. 1-4 at 61, 63.[1] The policy defined a "covered auto" as, among other things not relevant here, "[a]ny vehicle shown in the Declarations"—the Ford truck and two trailers—and "[a]ny newly acquired vehicle." *Id.* at 59. The policy provided that a "newly acquired additional vehicle" would be covered for "the first thirty (30) days after [acquisition of] the vehicle, including the date of acquisition . . . only if" the vehicle was acquired during the policy period shown on the policy's Declarations page and there was "no other insurance policy that provides coverage for the additional vehicle." *Id.* at 60. If a newly acquired additional vehicle was covered, the policy provided, that "[c]overage shall be the broadest coverage we provide for any vehicle shown in the Declarations." *Id.*

Stephens purchased a 2005 Chevrolet truck within the policy period. That same day, she obtained insurance coverage for the truck under a policy issued by First Acceptance Insurance Company, Inc. The First Acceptance policy included personal injury protection, property damage, comprehensive, and collision coverage, but it did not provide liability coverage. Several days later, Travis Stewart was driving the 2005 Chevrolet truck with Stephens's permission, and Calvert and Martin were passengers. The truck, without colliding with another

---

[1] "Doc." numbers are the district court's docket entries.

vehicle, flipped; Calvert and Martin were ejected from the truck and sustained serious injuries.

Calvert and Martin sued Stephens and Stewart in state court. Stephens and Stewart turned to Safeco, which agreed to defend Stephens with a reservation of rights but refused to indemnify her, concluding that she lacked coverage under the policy. Stephens agreed to entry of judgment against her and to assign her rights and causes of action against Safeco to Calvert and Martin.[2] Calvert and Martin then filed this lawsuit, seeking a declaratory judgment that the Safeco policy covered the accident.[3]

At the close of discovery, the parties filed cross-motions for summary judgment.[4] The district court granted Safeco's and denied Calvert's and Martin's, concluding that the 2005 Chevrolet truck was not a "covered auto" under the Safeco policy.

This is Calvert's and Martin's appeal.

## II.

---

[2] Calvert and Martin alleged in their complaint that Stewart also had agreed to entry of a judgment against him and assigned any rights and causes of action to them. As the district court noted, the record does not support their allegation.

[3] Safeco removed the action from state court to federal district court.

[4] Safeco also moved to dismiss, but the district court denied that motion as moot when it granted the insurer summary judgment.

We review *de novo* a district court order granting a motion for summary judgment, viewing the facts and all reasonable inferences drawn therefrom in favor of the nonmoving party. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291–92 (11th Cir. 2012). Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact," such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). If the nonmovant's evidence is "not significantly probative," summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). A genuine dispute of a material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252.

## III.

The Safeco policy expressly and unambiguously stated that Safeco would "not provide Liability Coverage for the ownership, maintenance or use of . . . [a]ny vehicle, other than [a] covered auto, which is . . . owned by [Stephens]." Doc. 1-4

5

at 62–63.  The only question in this appeal, then, is whether the 2005 Chevrolet truck was a "covered auto" at the time of the accident.  The truck would be covered as a "newly acquired additional vehicle" under the policy unless there was an "other insurance policy that provide[d] coverage" for the truck.  Doc. 1-4 at 60. Calvert and Martin argue that the First Acceptance policy did not "provide[] coverage" for the truck under the terms of the Safeco policy, *id.* at 60, because the First Acceptance policy lacked personal injury liability coverage and therefore was narrower in scope than the Safeco policy.  Because no other policy "provide[d] coverage" at the time of the accident, they argue, the truck was a "covered auto" under the Safeco policy.

Calvert and Martin acknowledge that "coverage," which is undefined in the Safeco policy, could mean *any* coverage at all.  If so, the First Acceptance policy would qualify as an "other insurance policy that provide[d] coverage" for the truck and would disqualify it from "covered auto" status under the Safeco policy.  They contend, however, that the term is ambiguous and may mean a *specific type* of coverage—here, liability coverage.  Under Florida law, they argue, the term must be construed in their favor.[5]  We disagree that the term is ambiguous.

---

[5] The parties agree that Florida law applies in this case.  "It is well settled that the construction of an insurance policy is a question of law for the court."  *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985).

"Under ordinary principles of contract interpretation, a court must first examine the natural and plain meaning of a policy's language." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1548–49 (11th Cir. 1996). "Under Florida law, if the terms of an insurance contract are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning . . . ." *Id.* at 1549. In other words, "unless an ambiguity exists, a court should not resort to outside evidence or the complex rules of construction to construe the contract." *Id.* "[I]n determining whether a contract is ambiguous, the words should be given their natural, ordinary meaning, and ambiguity does not exist simply because a contract requires interpretation or fails to define a term." *Id.* (citations omitted). "Courts are not authorized to put a strained and unnatural construction on the terms of a policy in order to create an uncertainty or ambiguity." *S.-Owners Ins. Co. v. Easdon Rhodes & Assocs.*, 872 F.3d 1161, 1164 (11th Cir. 2017) (internal quotation marks omitted).

"Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). "Likewise, ambiguous insurance policy exclusions are construed against the drafter and in favor of the insured." *Id.*; *see id.* ("In fact, exclusionary clauses are construed even more strictly against the insurer than coverage clauses.").

We discern no ambiguity in the Safeco policy's provisions explaining the scope of coverage for a newly acquired additional vehicle.  By requiring that any such vehicle have "no other insurance policy that provides coverage for the additional vehicle," the Safeco policy unambiguously excluded from coverage new vehicles covered by a separate insurance policy.  Since Stephens had secured a First Acceptance policy for the 2005 Chevrolet truck, she had an "other insurance policy that provide[d] coverage" for the truck and was not covered for the accident under the Safeco policy.

In arguing otherwise, Calvert and Martin point to our decision in *Southern-Owners Insurance Co. v. Easdon Rhodes and Associates, LLC*.  The policy language at issue in *Easdon Rhodes* provided coverage only if the insured "d[id] not have any other insurance available . . . which affords the same or similar coverage."  872 F.3d at 1163.  The policy did not define "similar coverage," but we held that the term unambiguously "refer[red] to another policy that is available to pay for the same or similar liability claimed under the policy at issue."  *Id.* at 1168 (alterations adopted) (internal quotation marks omitted).  We are unpersuaded that *Easdon Rhodes* supports Calvert's and Martin's position because the context of "coverage" in that case was entirely different.

First, the text of the provision in *Easdon Rhodes* was materially distinct from the one here, and those distinctions were crucial to our decision in that case.  True,

8

we explained there that the term "coverage" had two potential meanings:  "The term may either refer specifically to the inclusion of an individual risk covered by an insurance policy, or it may broadly refer to the overall scope of protection a particular insurance policy offers."  *Id.* at 1165.  Critically, however, we read "similar" with "coverage," explaining that "[s]imilar means 'alike in substance' or 'having characteristics in common.'"  *Id.* at 1165 (quoting Merriam-Webster's Collegiate Dictionary 1093 (10th ed. 1999)).  Here, there is no such limiting language.

Second, the "broader context" of the language at issue in *Easdon Rhodes* was materially distinct from the context here.  *Id.*  In *Easdon Rhodes*, the language was in an auto liability endorsement to a corporate general liability insurance policy.  *Id.* at 1162.  "Automobiles were specifically excluded from coverage under the original policy, but Easdon Rhodes purchased an Endorsement which expanded coverage to include certain categories of automobiles."  *Id.* at 1163.  We said, "common sense tells us that in the context of an endorsement to an insurance contract adding protection against specific risks otherwise excluded by the policy, the word 'coverage' refers to the specific risk protection being added rather than the universe of risks covered by the entire policy."  *Id.* at 1166.  The endorsement at issue in *Easdon Rhodes* served to "provide cheap, emergency protection for bodily injury and property damage stemming from the temporary business use of a

hired or borrowed auto that might not be adequately insured otherwise." *Id.* at 1168. "The Endorsement's exclusion clause reinforces this narrow purpose by making clear the provision only applies when this particularized risk is not protected against by 'any other [available] insurance.'" *Id.*

Here, in contrast, the restriction on coverage for newly acquired additional vehicles was written into the insurance contract itself. And rather than referring to a specific risk otherwise excluded by the policy, the "newly acquired additional vehicles" provision expressly stated that, if such a vehicle met the enumerated requirements, "[c]overage shall be the broadest coverage we provide for any vehicle shown in the Declarations." Doc. 1-4 at 60.[6] Unlike in *Easdon Rhodes*, the broader context of the language at issue here does not at all suggest that "coverage" should be limited to specific types of risk protection. For these reasons, we disagree with Calvert and Martin that *Easdon Rhodes* renders the language in the Safeco policy ambiguous or even favors their position.

## IV.

The language of the Safeco policy unambiguously provided no coverage for a newly acquired additional vehicle that was covered by another insurance policy. Because Stephens had insured the 2005 Chevrolet truck with a First Acceptance

---

[6] Calvert and Martin argue this "broadest coverage" language dictates that we broadly construe the scope of protection for newly acquired vehicles. It does not; rather, it simply states the scope of coverage provided *if* the vehicle is a covered auto under the policy.

policy, she was not covered by Safeco for the truck's accident.  The district court correctly rendered summary judgment in favor of Safeco, and we affirm.

**AFFIRMED.**