**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-13031

_____

L. SQUARED INDUSTRIES, INC.,

*Plaintiff-Appellant,*

*versus*

NAUTILUS INSURANCE COMPANY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:21-cv-01104-BJD-PDB

_____

Before JORDAN, LAGOA, and TJOFLAT, Circuit Judges.

PER CURIAM:

This case is about whether Nautilus Insurance Co. ("Nautilus"), a surplus-lines insurer, is required to cover an accidental release of petroleum from an underground storage tank ("UST") owned by L. Squared Industries, Inc. ("L Squared"). L Squared, an

owner and operator of gas stations in Florida, contracted with Nautilus for storage tank liability insurance, which covered the cleanup costs of pollution conditions caused by UST discharge. After incurring both cleanup and defense costs from a discharge incident, L Squared sought indemnification from Nautilus. When Nautilus denied L Squared's request for coverage, L Squared sued Nautilus for declaratory judgment and damages. Cross motions for summary judgment followed with Nautilus asserting that it had no duty to indemnify L Squared as a matter of law, and L Squared asserting the opposite.

The district court granted Nautilus's motion for summary judgment and denied L Squared's. It concluded that Nautilus had no duty to indemnify L Squared as a matter of law for several reasons. As relevant here, Nautilus' insurance policy included a notice provision requiring an insured party to notify Nautilus "as soon as reasonably possible, but in any event, not more than seven (7) days after the insured first became aware of, or should have become aware of[,] a pollution condition which may result in a claim or any action or proceeding to impose an obligation on the insured for cleanup costs." The district court determined that L Squared learned of a pollution condition in August 2018. But L Squared did not notify Nautilus of that pollution condition until April 2019, eight months after finding out about it. Based on the plain language of the seven-day notice provision, the district court concluded that L Squared failed to provide timely notice, thus absolving Nautilus from any duty to defend or indemnify L Squared under the policy.

L Squared now appeals the district court's order. After carefully considering the record and with the benefit of oral argument, we affirm the district court's entry of summary judgment for Nautilus on the ground that L Squared failed to timely notify Nautilus as required by its policy.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

### A.　The Parties and the Insurance Policy

In 1974, Robert and Felicity Maley purchased L Squared, which owns and operates gas stations in Florida, including an Exxon station in St. Augustine. These gas stations contain UST systems "that store regulated [ ] substances to minimize the occurrence of environmental risks of releases and discharges." *See* Fla. Admin. Code. r. 62-761.100 (2017). Nautilus is a corporation authorized to issue insurance policies for USTs used at gas stations like the Exxon station that L Squared owns. In July 2018, Mrs. Maley sought "Storage Tank Liability Insurance" from Nautilus for the USTs located at L Squared's Exxon station.

Nautilus issued a "Claims Made & Reported Coverage" insurance policy to L Squared, effective from July 18, 2018, to July 18, 2019. The policy contained terms that defined the scope of Nautilus's coverage, including the following notification provision:

VI. REPORTING OF A POLLUTION CONDITION, CLAIM OR SUIT

1. You must see to it that we are notified as soon as reasonably possible, but in any event, not more than seven (7) days after the insured first became aware of,

or should have become aware of a pollution condition which may result in a claim or any action or proceeding to impose an obligation on the insured for cleanup costs . . . .

### B.    Discharge Incidents at the St. Augustine Exxon

In September 1985, before the Maleys were involved with the Exxon station at issue in this case, Exxon discovered a petroleum hydrocarbon discharge at the station ("1985 Discharge"). The State of Florida determined that the 1985 Discharge qualified for the Florida Department of Environmental Protection's ("FDEP") reimbursement program. In 1990, the discharge became eligible for remediation funding via the Early Detection Incentive ("EDI") Program, which funds remediation of discharges. In October 2006, the previous tank system was removed and replaced by the tank in use today.

Fast forward ten years. On May 23, 2017, the FDEP conducted a site inspection at the Exxon station—which at this point was owned by L Squared. The FDEP's visual inspection of the Exxon station revealed that certain components of its UST system were damaged and had "or could cause a discharge or release." *See* Fla. See Fla. Admin. Code R. 62-761.430(1)(a)(10).[1] Specifically, FDEP found: (1) several UST boots were cracked and needed to be

---

[1] Florida Administrative Code Rule 62-761.430 requires owners or operators to file an Incident Notification Form ("INF") when a visual inspection reveals damage to certain components of an UST system. *See* Fla. Admin. Code R. 62-761.430(1)(a)(10). L Squared filed an INF, at the FDEP's direction, after the agency's visual inspection.

replaced or repaired; (2) hydrotesting needed to be done "prior to boot repairs to determine if a discharge could have occurred"; and (3) if it was clear that hydrotesting would fail, "closure sampling [would] likely be required."

After hydrotesting and soil inspection, soil pollution was detected in sample SB-4-2, adjacent to the cracked boots at the UST flagged by the FDEP's May 23, 2017 inspection. The FDEP reviewed these results and determined that the SB-4-2 sample results indicated that a new discharge ("2017 Discharge") had occurred, unrelated to any prior discharge, including the 1985 Discharge. The FDEP told L Squared it would need to have additional groundwater testing and soil sampling done to determine the extent of the contamination. It also requested that L Squared submit a Discharge Report Form.

In March 2018, Mr. Maley submitted a Discharge Report Form to the FDEP, which documented the new discharge and its date of discovery. Mr. Maley indicated on the form that the UST discharge was discovered in July 2017, the date the "hydrotesting was done." L Squared did not, however, have the additional testing done at this time.

C.    *L Squared's Consultant Reports a Pollution Condition*

In June 2018, L Squared had a dispenser sump[2] replaced at fuel dispenser 5/6.   L Squared hired Taylor Environmental

---

[2] A dispenser sump is a box-like chamber found directly beneath fuel dispensers at gas stations.

Consulting ("Taylor") to conduct closure assessments in connection with this,  and while running tests, Taylor noticed groundwater contamination that it believed could be related to the 1985 Discharge or the 2017 Discharge.  In its post assessment report, which was sent to the FDEP on August 16, 2018, Taylor identified a groundwater sample that "indicated benzene, ethylbenzene, toluene, total xylenes, bromodichloromethane, and dibromochloromethane" at levels higher than what the Florida Administrative Code allows.  Taylor wrote that it believed "the contaminant concentrations in groundwater [were] from the original discharge reported in 1985 *or* from the discharge that was reported on March 8, 2018, [since] these discharges occurred in close proximity to" the fuel dispenser sump it evaluated.  Taylor encouraged L Squared to complete the sampling activities the FDEP had previously requested.

Although L Squared received this report from Taylor in August 2018, it did not hire Taylor to perform the needed testing at that point, nor did it notify Nautilus—its UST insurer at the time—about the discharge until April 19, 2019.  On June 12, 2019, Nautilus denied L Squared's insurance request.

### D.    *Legal Proceedings*

In 2021, L Squared sued Nautilus in Florida state court, seeking a declaration of its rights under Nautilus's insurance policy and damages for Nautilus's alleged breach of contract.  The case was removed to the United States District Court for the Middle District of Florida.  After discovery, the parties filed cross motions for

23-13031                Opinion of the Court                7

summary judgment.  The district court granted Nautilus's—and denied L Squared's—motion for summary judgment on several grounds, including that L Squared was not entitled to coverage because it failed to notify Nautilus within seven days of "becoming aware of" the pollution condition, as expressly required by Nautilus' policy.  The district court entered final judgment in favor of Nautilus on June 27, 2023.  L Squared moved for reconsideration, which the district court denied.  L Squared timely appealed.

## II.    STANDARD OF REVIEW

We review the district court's order granting summary judgment *de novo*.  *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004).[3]  Granting summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he interpretation of an insurance contract is a strict question of law and also is subject to *de novo* review."  *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 48 F.4th 1289, 1302 (11th Cir. 2022).

## III.    ANALYSIS

---

[3] Citing to *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240 (11th Cir. 2015), L Squared argues that we must review the district court's findings of fact for clear error.  That is incorrect.  In *Carithers*, we reviewed a district court's order from a bench trial.  *Id.* at 1245 ("Following a bench trial, we review legal conclusions de novo and findings of fact for clear error.").  Here, we are reviewing a district court's summary judgment order, which requires *de novo* review. *See Steinberg*, 393 F.3d at 1230 (explaining that district court orders granting summary judgment are reviewed *de novo*).

In granting summary judgment for Nautilus, the district court determined that, under the insurance policy, Nautilus was not required to cover L Squared's pollution-condition cleanup costs because L Squared failed to timely report the pollution condition to Nautilus, as required by the policy's terms. We now affirm the district court's entry of summary judgment in favor of Nautilus, but for a different reason.

Under Florida law,[4] ordinary contract principles govern the interpretation and construction of insurance policies. *See Graber v.*

---

[4] In its motion for summary judgment at the district court, Nautilus argued that New York law should apply. On appeal, however, it did not argue that the district court's decision to apply Florida law was erroneous. Nautilus only discussed choice of law in its "Standard of Review" section and stated that it "ultimately agrees with the district court that 'the outcome would be the same'" irrespective "of whether New York or Florida law applies." Because choice of law is not a jurisdictional issue, it can be waived if abandoned on appeal. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 778 (1984) ("The question of the applicability of New Hampshire's statute of limitations to claims for out-of-state damages presents itself in the course of litigation only after jurisdiction over respondent is established, and we do not think that such choice of law concerns should complicate or distort the jurisdictional inquiry."); *see Mesa Air Grp., Inc. v. Delta Air Lines, Inc.*, 573 F.3d 1124, 1128 (11th Cir. 2009) (finding that when a party had failed to present a choice-of-law issue to the trial court, the issue was waived on appeal). By not specifically and clearly identifying the choice of law issue in the Argument section of its brief, Nautilus has abandoned it on appeal. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir.2004) ("Any issue that an appellant wants the Court to address should be specifically and clearly identified in the brief."); *see also Cole v. U.S. Atty. Gen.*, 712 F.3d 517, 530 (11th Cir. 2013), *abrogated by Nasrallah v. Barr*, 590 U.S. 573 (2020) ("If the party mentions the issue only in his Statement of the Case but does not elaborate further in the Argument section, the party has

23-13031              Opinion of the Court                    9

*Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002). And "[u]nder ordinary principals of contract interpretation, a court must first examine the natural and plain meaning of a policy's language." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1548–49 (11th Cir. 1996) (citing *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1993)); *see also Westchester Gen. Hosp., Inc.*, 48 F.4th at 1302 ("In Florida, insurance contracts are construed according to their plain meaning." (internal quotations omitted)). "[I]f the terms of an insurance contract are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning." *Key*, 90 F.3d at 1549 (internal citation omitted). However, if the policy's language "is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage," *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 570 (Fla. 2011) (internal quotations omitted), a court should construe such ambiguous language in favor of the insured party, *Key*, 90 F.3d at 1549.

    The policy at issue here is a claims-made policy, and such a policy generally provides coverage for covered claims reported to the insurer during the policy period (or some additional reporting period specified in the policy). *See Gulf Ins. Co. v. Dolan, Fertis & Curtis*, 433 So. 2d 512, 514 (Fla. 1983) ("The essence . . . of a claims-made policy is notice to the carrier within the policy period."). Claims-made policies can have two different types of notice

---

abandoned that issue."). Thus, we do not review the district court's decision to apply Florida law.

provisions.  The first type requires that the "claim be made during the policy period in order for the loss to be treated as falling within the period of time covered by the policy," while the second type usually requires the insured to notify the insurer "of a claim or potential claim 'promptly' or the like[.]"  13 Jordan R. Plitt et al., Couch on Insurance § 186:13 (June 2025 update).

The policy here contained both types of notice provisions.

First, the policy covered cleanup costs resulting from pollution conditions on, at, or under "covered location(s)," "provided that the pollution conditions are first discovered during the policy period and reported to [Nautilus] in writing, during the policy period or Extended Reporting Period, if applicable[.]"  D.E. 57-4, Part I, Coverage A ¶¶ 1–2.

Second, the policy included a provision concerning the "Reporting of a Pollution Condition, Claim, or Suit": "You [L Squared] must see to it that we [Nautilus] are notified as soon as reasonably possible, but in any event, not more than seven (7) days after [L Squared] first became aware of, or should have become aware of a pollution condition which may result in a claim or any action or proceeding to impose an obligation on [Nautilus] for cleanup costs."  D.E. 57-4, Part VI ¶ 1.

L Squared notified Nautilus of its claim (*i.e.*, the pollution conditions) in April of 2019, well within the July 2018–July 2019 period covered by the claims-made policy.  So, the first type of notice provision is not at issue.  But L Squared failed to tell Nautilus of the pollution condition within seven days of receiving Taylor's August

2018 report. The question, therefore, is whether this breach of the seven-day notice provision (the second type of notice provision) results in lack of coverage.

As an initial matter, we conclude that the answer is no—at least not automatically. As one treatise points out, the seven-day notice provision is not meant to ensure that a claim is made within the period of time covered by the claims-made policy. It is instead "directed at ensuring promptness of notice, maximizing the insurer's opportunity to investigate, set reserves, and control or participate in negotiations with the third party asserting the claim against the insured." 13 Couch on Insurance § 186:13.

The majority of courts who have opined on this issue have applied the notice-prejudice rule, which establishes that when an insured provides notice within the policy period of a claims-made policy (the first type of notice), and breaches only the requirement that it also provide notice within a specified period of time (the second type of notice), coverage is not automatically lost. Instead, the insurer needs to show prejudice in order to bar coverage: "Most courts have applied the notice-prejudice rule to traditional claims-made policies that require notice or reporting to the insurer 'promptly' or 'as soon as practicable.'" 4 Bruner & O'Connor on Construction Law § 11:129 & n.8 (Nov. 2024 update) (citing cases).

For example, the Texas Supreme Court has explained the majority view this way:

> In a claims-made policy, when an insured gives notice
> of a claim within the policy period or other specified

reporting period, the insurer must show that the insured's noncompliance with the policy's "as soon as practicable" notice provision prejudiced the insurer before it may deny coverage. Here, it is undisputed that [the insured] gave notice of the . . . lawsuit before the ninety-day cutoff. Even assuming that [the insured] did not give notice "as soon as practicable," [the insurer] was not denied the benefit of the claims-made nature of its policy as it could not "close its books" on the policy until ninety days after the discovery period expired.

*Prodigy Commc'ns. Corp. v. Agric. Excess & Supply Ins. Co.*, 288 S.W.3d 374, 382 (Tex. 2009). We agree.

Another reason for requiring the insurer to show prejudice when only the second type of notice provision is breached is that the concern for expanding the scope of coverage "wanes for a prompt-notice provision, which does not define the scope of coverage but rather ensures that the insurer has adequate time to respond to the claim." *Ottawa Bancshares, Inc. v. Great Am. Sec. Ins. Co.*, 764 F. Supp. 3d 1079, 1095 (D. Kan. 2025); *see also id.* at 1096 ("Based on the general weight of authority and the notice-prejudice rule's weakened rationale in this context, the Court predicts that the Kansas Supreme Court would follow suit and apply the notice-prejudice rule where, as here, the insured gave notice within the policy period but not as soon as practicable.").

Leading treatises also support the application of the notice-prejudice rule in cases like this one. The Restatement of Liability Insurance, for example, states that "[p]rejudice [on the part of the

insurer] is required [to bar coverage] when notice is late but given before the end of the reporting period." Restatement of Liability Insurance § 35, cmt. h (Am. L. Inst. 2019) (emphasis omitted); *see also* 13 Couch on Insurance § 186:13 ("Even where prejudice to the insurer is required to be shown for coverage of a loss to be avoided for lack of 'prompt' notice of claim, no such showing of prejudice need be made in order for the insurer to avoid coverage of claims that simply are not made within the policy period."); 4 Bruner & O'Connor on Construction Law § 11.129 (quoted above).

We recognize that there are no Florida cases directly addressing whether the notice-prejudice rule applies in a case where the insured provides notice during the coverage period of a claims-made policy but fails to provide that notice within a specified period of time. Where there is an absence of state-law precedent in a diversity case like this one, we "presume that [the state] courts would adopt the majority view on a legal issue in the absence of indications to the contrary." *SA Palm Beach v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1358 (11th Cir. 2022) (internal quotation marks and citation omitted). Given the authorities cited above, we must presume that Florida courts would adopt and apply the notice-prejudice rule in a case like this one and therefore apply the notice-prejudice rule here.

Although Florida courts have not addressed whether they would adopt the notice-prejudice rule in this context, they have addressed the more general issue of what presumptions apply when an insured breaches a notice provision. In Florida, "[i]f the insured

breaches the notice provision [of the policy], prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice." *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985). This rule applies "to claims under a [personal injury protection] policy just as well as to claims under other policies." *Id.* Under *Macias*, then, L Squared had the burden at summary judgment to present sufficient evidence to create an issue of fact as to whether Nautilus was prejudiced by its breach of the seven-day notice provision. Yet, as the district court explained, L Squared did not present "specific arguments to rebut the presumption of prejudice" until it filed its motion for reconsideration of the summary judgment order. *See* D.E. 101 at 16 n.5. And even then, it did so "without citing to the record." *Id.*

On this record, L Squared did not do enough to rebut the presumption of prejudice provided by Florida law and create an issue of fact for the jury. First, a losing party cannot use a motion for reconsideration to "raise [an] argument or present evidence that could have been raised prior to the entry of judgment." *Samara v. Taylor*, 38 F.4th 141, 153 (11th Cir. 2022) (internal quotation marks and citation omitted). Second, the district court was under no obligation to search the record for evidence which might create an issue of fact as to prejudice. *See Coleman v. Hillsborough County*, 41 F.4th 1319, 1328 (11th Cir. 2022). And L Squared's citations to the record in its appellate brief come too late.

In sum, the district court correctly granted summary judgment to Nautilus based on L Squared's breach of the seven-day notice provision because L Squared did not rebut the presumption of prejudice to Nautilus under Florida law. *See Kramer v. State Farm Florida Ins. Co.*, 95 So. 3d 303, 307 (Fla. 4th DCA 2012) ("Here, the insureds failed to come forward with counterevidence sufficient to reveal a genuine issue of material fact as to whether the insurer was prejudiced by the insureds' untimely pre-suit notice of the alleged loss and untimely pre-suit submission of the sworn proof of loss."). Therefore, we affirm the entry of summary judgment in favor of Nautilus based on L Squared's breach of the seven-day notice provision.

## IV.    CONCLUSION

For the reasons stated, we affirm the district court's order granting summary judgment in favor of Nautilus.

**AFFIRMED.**